STATE of Wisconsin, Plaintiff-Respondent-
Petitioner,

v.

Charles A. DUNLAP, a/k/a Char Lee Dancing Eagle,
Defendant-Appellant.

Supreme Court

*No. 99–2189–CR. Oral argument October 16, 2001.—Decided
February 27, 2002.*

2002 WI 19

(Also reported in 640 N.W.2d 112.)

467

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Jack E. Schairer,* assistant state public defender.

¶ 1. JON P. WILCOX, J. In this case we review a published decision of the court of appeals, *State v. Dunlap,* 2000 WI App 251, 239 Wis. 2d 423, 620 N.W.2d 398, which reversed an order of the Walworth County Circuit Court, John R. Race, Judge. The question before us is whether a defendant who is charged with sexual assault should be allowed to present evidence of sexual behavior exhibited by the child complainant prior to the alleged assault, even though the evidence would normally be barred by the rape shield law, because the State has introduced expert testimony to explain the complainant's reporting behavior.

¶ 2. The defendant, Charles Dunlap, was convicted of first-degree sexual assault of a child in violation of Wis. Stat. § 948.02(1) (1989–90). During the trial, the circuit court did not allow Dunlap to introduce evidence of the complainant's prior sexual behavior, holding that it was barred by the rape shield law, Wis. Stat. § 972.11(2) (1997–98).[1] Dunlap challenged this ruling on appeal. The court of appeals reversed Dunlap's conviction, and held that the State had opened the door to Dunlap's proffered evidence when it offered expert testimony to explain inconsistencies in the

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

472

complainant's testimony as behaviors commonly displayed by sexual assault victims. *Dunlap,* 2000 WI App 251, ¶ 19. The court of appeals also found that the defendant's proffered evidence was not barred under either the hearsay rule or the rape shield law. *Id.* at ¶¶ 24, 30. On review, we hold that the circuit court was correct in preventing the defendant from introducing this evidence. We therefore reverse the court of appeals' decision and reinstate Dunlap's conviction.

I

¶ 3. Charles Dunlap babysat six-year-old Jamie F. on the evening of November 7, 1989. Two days later, Jamie informed her mother that Dunlap had "touched her private parts" when he babysat her. Jamie's father reported the incident to the police, who then secured a warrant for Dunlap's arrest. About the same time, Dunlap apparently left Wisconsin. Dunlap was apprehended approximately eight years later in California.

¶ 4. Jamie was 15 years old when Dunlap's trial began. At trial, Jamie testified that when she was six, on the evening in question, she had been left in Dunlap's care at the house of two of her mother's friends, Susan Smith and Gary Cox. Dunlap had been staying temporarily with Smith and Cox at their house. Jamie testified that while she was lying down to go to sleep in the bedroom, Dunlap had entered the room and had lain down beside her. Jamie testified that Dunlap had put his hands inside her underwear and had fondled her buttocks and vagina.

¶ 5. On cross-examination, defense counsel established several inconsistencies in Jamie's testimony. When Jamie was interviewed in 1989, she had told investigators that Cox's son Shawn had been in the

house at the time of the assault. At trial, Jamie stated that she had been in the house alone with Dunlap. In 1989, Jamie had not said that Dunlap penetrated her vagina with his finger, while at the preliminary hearing and at trial she testified that he had. Finally, defense counsel noted that in 1989, Jamie had not said that Dunlap threatened her. At trial, Jamie testified that Dunlap had threatened to kill her parents if she were to tell anyone what happened.

¶ 6. In an effort to rehabilitate Jamie, the State called Theresa Hanson, a child protective services investigator for Walworth County, who provided expert testimony about the typical reporting behaviors of child sexual assault victims. Hanson testified that children at age six often do not grasp the concepts of "in" and "out" in reference to something being put into their genitalia. Hanson also testified that six-year-olds are often confused about the details that surround a sexual assault, that they focus on the core activity, and that they sometimes have problems grasping the concepts of "before" and "after." Hanson noted that Jamie had reported the incident to her mother at a location away from where the incident took place, and stated that factors such as fear, guilt and embarrassment could have explained Jamie's inconsistencies and her delay in reporting certain aspects of the alleged assault. Hanson also noted certain behaviors Jamie had displayed during their 1989 interview—fidgeting, kicking the table, putting her hands in her mouth, and reticence to talk about the assault. Hanson indicated that Jamie's behavior was consistent with that of other sexual assault victims in all of these regards.

¶ 7. During cross-examination, defense counsel asked Hanson if a six-year-old with "detailed and unexplained sexual knowledge" was an indicator of sexual

assault. The prosecutor objected on relevance grounds and noted that the State had not offered any evidence of unexplained sexual precocity on the part of Jamie. Dunlap argued that because the State had introduced testimony about the complainant's behaviors that were consistent with sexual assault victims, it would have been inappropriate to leave the jury with the impression that the behaviors necessarily resulted from a sexual assault by the defendant.

¶ 8. The defendant made the following offer of proof. Hanson's 1989 report included a statement from Susan Smith stating that Smith was concerned about Jamie. Smith, who was deceased by the time of Dunlap's trial, allegedly told Hanson that Jamie had been involved in a great deal of "seductive behavior" including touching men in the genital area, "humping the family dog," and frequent masturbation. Smith noted that these behaviors had occurred before the alleged assault by Dunlap.

¶ 9. The State argued that the evidence proffered by the defense was barred by the rape shield law, Wis. Stat. § 972.11(2), and that any attempt to admit the evidence should have been made in a motion in limine. Additionally, the State argued that the evidence should be barred as inadmissible hearsay.

¶ 10. The circuit court sustained the State's objection. The court held that the expert testimony presented by Hanson had not been offered by the State to show whether or not Jamie had been assaulted, but rather it was offered to show why Jamie might have been slow in reporting certain aspects of the alleged assault. The court thus held that the State had not "opened the door" to the defendant's testimony. Furthermore, the court held that the statements by Susan Smith were hearsay and did not fit into any of the

475

exceptions for hearsay by an unavailable witness. The court did allow Dunlap to cross-examine Hanson about typical behaviors of sexual assault victims that Jamie had not exhibited and about the fact that Jamie's reporting behaviors, although consistent with those of other sexual assault victims, could not necessarily be linked to any one assailant, or to Dunlap in particular. The jury found Dunlap guilty of first-degree sexual assault of a child and he was sentenced to 20 years in prison. Dunlap renewed his argument regarding Hanson's testimony on a post-conviction motion, but the motion was denied by the circuit court.

¶ 11. On appeal, Dunlap challenged the circuit court's ruling that he could not admit the evidence of Jamie's prior sexual behaviors over the rape shield law. Dunlap argued that this error deprived him of his constitutional right to present a defense. The court of appeals agreed with Dunlap. *Dunlap*, 2000 WI App 251, ¶ 36. The court of appeals held that the State had opened the door to the defendant's proffered evidence when it introduced expert testimony that compared Jamie's behavior to that of other sexual assault victims. *Id.* at ¶ 19. The court concluded that Dunlap had been denied the right to fully cross-examine Hanson and thereby was entitled to a new trial.

¶ 12. The court of appeals went on to hold that Smith's statements were also not barred by the hearsay rule or by the rape shield law. Finding that the hearsay rule could be overcome, the court noted that "due process and 'fair play' " required the admission of the evidence and that there was "some assurance that Smith's statement [was] trustworthy." *Id.* at ¶ 24. In determining that the rape shield law did not bar admission of the evidence, the court of appeals applied the test set down by this court in *State v. Pulizzano,* 155

Wis. 2d 633, 456 N.W.2d 325 (1990), and found that the evidence met the requirements of that test. The court of appeals reversed Dunlap's conviction and ordered a new trial. *Dunlap,* 2000 WI App 251, ¶ 36.

¶ 13. On review, we hold that the court of appeals incorrectly applied the *Pulizzano* test and that the State did not open the door to Dunlap's proffered evidence. We therefore reverse the decision of the court of appeals and reinstate Dunlap's conviction.

## II

¶ 14. We use the curative admissibility doctrine, commonly referred to as "opening the door," as the framework for our analysis. *See* 1 *McCormick on Evidence* § 57, at 253 n.3 (5th ed. 1999); 1 Wigmore, *Evidence* § 15 (Tillers rev. 1983). The curative admissibility doctrine is applied when one party accidentally or purposefully takes advantage of a piece of evidence that would normally be inadmissible. *State v. Jackson,* 216 Wis. 2d 646, 665, 575 N.W.2d 475 (1998). Under such circumstances, the court may allow the opposing party to introduce otherwise inadmissible evidence if it is required by the concept of fundamental fairness to prevent unfair prejudice. *Bertrang v. State,* 50 Wis. 2d 702, 706, 184 N.W.2d 867 (1971); *Pruss v. Strube,* 37 Wis. 2d 539, 543–44, 155 N.W.2d 650 (1968).

¶ 15. We therefore approach this issue in three steps. We must first determine if the evidence in Dunlap's offer of proof was, in fact, inadmissible—in this case, whether the rape shield law prohibits the introduction of the evidence. If the rape shield law does forbid introduction of the evidence, we must next determine if any statutory or judicial exception to the

477

rape shield law applies. In particular, we look at the exception articulated by this court in *Pulizzano*. If we find that the proffered evidence was still inadmissible, we then must determine whether the State opened the door, requiring the circuit court to admit the otherwise inadmissible evidence to prevent unfair prejudice. When reviewing Dunlap's offer of proof, we note that the offer of proof need not be stated with complete precision, but it must state an evidentiary hypothesis supported by a sufficient statement of facts to warrant the conclusion that the court is asked to make. *State v. Robinson,* 146 Wis. 2d 315, 327–28, 431 N.W.2d 165 (1988).

### A

¶ 16. We first address the applicability of the rape shield law, Wis. Stat. § 972.11(2), to the evidence proffered by Dunlap. Wisconsin Stat. § 972.11(2) provides, in relevant part:

> (a) In this subsection, "sexual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

> (b) If the defendant is accused of a crime under s. 940.225, 948.02, 948.025, 948.05, 948.06 or 948.095, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

(c) Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b)1., 2. or 3.

In this case, the overt sexual behaviors exhibited by Jamie are clearly examples of "sexual conduct" as envisioned by the statute. Unless the behaviors are somehow exempted from the rape shield law, the evidence offered by Dunlap is inadmissible under § 972.11(2).

## B

¶ 17. Having found that the rape shield law applies, we must next determine whether the evidence offered by the defendant is admissible under a statutory or judicial exception to the rape shield law. The statute itself lists three types of evidence that are excepted from the rape shield law: (1) evidence of the complainant's past conduct with the defendant; (2) evidence of specific instances of sexual conduct used to show the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered; and (3) evidence of prior untruthful allegations of sexual assault made

479

by the complainant. Wis. Stat. § 972.11(2)(b). The evidence that Dunlap seeks to admit—the sexually precocious behavior of the complainant prior to the alleged assault—clearly does not fall into any of these statutory categories.

¶ 18. However, Dunlap argues that the evidence is admissible under the judicial exception to the rape shield law articulated by this court in *State v. Pulizzano,* 155 Wis. 2d at 651. In that case, we held that under certain circumstances, evidence of a sexual assault complainant's sexual history may be admitted over the rape shield law to protect the defendant's constitutional right to present a defense. *Id.* at 651–52.

¶ 19. Wisconsin's rape shield law was enacted to counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations. *Michael R.B. v. State,* 175 Wis. 2d 713, 727, 499 N.W.2d 641 (1993). However, we have recognized that the rule takes on a slightly different role when the complainant is a child. *Id.* at 727–28. Because the normal presumption is that a child does not have a sexual history, it is possible that a jury might incorrectly attribute any evidence of a child complainant's sexual behavior to an assault by the defendant. Thus, the possibility of using past sexual experience to provide an alternate source of a child's sexual knowledge or a child's injury might be relevant to a defendant's case. *Id.* at 728. Still, this type of evidence can be extremely prejudicial. Any evidence of a complainant's prior sexual behavior can improperly focus attention on the complainant's character and past actions, rather than on the circumstances of the alleged assault. *Id.* at 727. Thus, a balance has to be struck.

480

¶ 20. In order to balance the interests of the defendant and the complainant, this court developed a narrow test to determine when a defendant's right to present a defense should supersede the state's interest in protecting the complainant from prejudice and irrelevant inquiries. In *State v. Pulizzano,* we held that evidence of a child complainant's past sexual behavior may be admissible over the rape shield law if it meets a five-part test and if the defendant's right to present the evidence outweighs the state's interests in excluding it. *Pulizzano,* 155 Wis. 2d at 651–52. In applying that test to Dunlap's case, we hold that the evidence offered by Dunlap does not meet the criteria of *Pulizzano* and is therefore inadmissible.

¶ 21. To meet the *Pulizzano* test, the defendant must show that the proffered evidence meets five criteria: (1) the prior acts must have clearly occurred; (2) the prior acts must closely resemble those of the present case; (3) the prior acts must be clearly relevant to a material issue; (4) the evidence must be necessary to the defendant's case; and (5) the probative value of the evidence must outweigh its prejudicial effect. *Id.* at 651–52. If the five prongs are met, the court must then balance the parties' interests to determine if the evidence is admissible. *Id.*

¶ 22. Although the State challenges Dunlap on all five of the *Pulizzano* criteria, we limit our focus to the second criterion—whether the acts sought to be admitted by the defendant closely resemble those of the present case. Here, Dunlap was accused of touching Jamie's buttocks and vagina, and the evidence Dunlap seeks to admit includes Jamie's masturbating, touching men in the genital area, and "humping the family dog."

481

Dunlap argues that all of the events "involve touching" and are therefore sufficiently alike to pass the *Pulizzano* test. Similarly, in overturning Dunlap's conviction, the court of appeals compared Hanson's testimony about "abnormal" behavior for a six-year-old, to Dunlap's offer of proof that involved "abnormal behavior" for a six-year-old, and concluded that enough similarity existed for the evidence to pass the second prong of *Pulizzano*. *State v. Dunlap*, 2000 WI App 251, ¶ 29.

■

¶ 23. We disagree with both of these characterizations of the acts in question and we refuse to interpret the second prong of *Pulizzano* so broadly. We hold that the acts about which Dunlap wishes to introduce evidence do not sufficiently resemble those of the present case to pass the *Pulizzano* test.

¶ 24. The *Pulizzano* case itself is instructive on how similar the prior acts must be to meet the test. In *Pulizzano,* the defendant was accused of having sexual contact with several children. The assaults included fondling, fellatio, anal penetration with an object, and digital vaginal penetration. *Pulizzano,* 155 Wis. 2d at 640–41. Ms. Pulizzano sought to admit evidence of a prior sexual assault on one of the victims, seven-year-old M.D., to show an alternative source of the boy's sexual precocity. The prior assault had included "fondling and 'sodomy of the penis,' . . . fellatio, and 'possibly' anal penetration." *Id.* at 652. The previous sexual assault on M.D. had also been committed by several adults, including an older female—a situation which mirrored the circumstances of the alleged assault in *Pulizzano* almost exactly. *Id.* at 639. This court held that the facts of the two cases were sufficiently similar to meet the second prong of the test. *Id.*

¶ 25. Conversely, in *Michael R.B.,* this court found that prior acts of sexual touching were not sufficiently similar to acts of sexual intercourse to be admitted under *Pulizzano. Michael R.B.,* 175 Wis. 2d at 736. In *Michael R.B.,* the defendant sought to admit evidence that the eight-year-old complainant and her brother had been seen on a swing " 'touching each other's private parts.' " *Id.* at 726. The defendant wanted to use this evidence as an alternate explanation for evidence that the complainant's hymenal opening was larger than it should have been. *Id.* at 726–27. This court found it an "insupportable leap of reasoning" to conclude that the offered evidence was sufficiently similar to the act of penis-to-vagina intercourse alleged in *Michael R.B.* to meet the *Pulizzano* test. *Id.* at 736.

¶ 26. In *State v. Dodson,* 219 Wis. 2d 65, 580 N.W.2d 181 (1998), we qualified our holding in *Michael R.B.* and noted that the order and scope of the incidents is relevant to the analysis. In *Dodson,* the defendant wanted to admit evidence of a prior incident of sexual intercourse to show an alternative source of the victim's sexual knowledge in a case where the defendant was accused of sexual contact. *Id.* at 68. This court held that even though in *Michael R.B.* we held that a previous act of sexual contact was not sufficiently like sexual intercourse to pass the second prong of the *Pulizzano* test, a previous act of sexual intercourse necessarily involves sexual contact and could meet the second prong of *Pulizzano* in a case where only sexual contact was alleged. *Id.* at 78–79.

¶ 27. In the present case, the acts that Dunlap seeks to admit are not even close to the type of act he is accused of committing. Dunlap is alleged to have committed an act of finger-to-vagina sexual contact with possible digital penetration. The prior behaviors that

483

Dunlap seeks to introduce—that the complainant had touched men in the genital area, writhed on men's laps, masturbated, and "humped the family dog"—bear very little similarity to the acts at issue in the present case.

¶ 28. Dunlap asks us to infer that these behaviors exhibited by Jamie could have been brought on by a previous act of sexual abuse, but Dunlap is unable to connect Jamie's behaviors with any specific incident. Furthermore, Dunlap cannot rule out the possibility that Jamie might have learned these behaviors from exposure to pornography or from having viewed sexual activity, rather than from having been previously sexually assaulted. Dunlap's inability to show a connection to any specific prior incident leads us to conclude that he has not met the second prong of the *Pulizzano* test.

¶ 29. Because Dunlap's offer of proof does not meet the second prong, we do not need to go further in applying *Pulizzano*. Dunlap's offer of proof fails the *Pulizzano* test, and his evidence is therefore not admissible over the rape shield law.[2]

C

¶ 30. Finally, Dunlap claims that even though the evidence of Jamie's prior behavior is inadmissible under § 972.11(2) and does not meet any exception to the rape shield law, he is still entitled to introduce the evidence because the State "opened the door" to its admission. Dunlap argues that he must be allowed to present the evidence out of fundamental fairness. We disagree.

---

[2] Because we hold that Dunlap's proffered evidence is inadmissible under the rape shield law and *Pulizzano,* we do not reach the hearsay question.

■
¶ 31. The admission of evidence is a decision that is left to the discretion of the circuit court. *Jackson,* 216 Wis. 2d at 655. We will not find an erroneous exercise of that discretion when the circuit court has properly applied the facts of record to the accepted legal standards. *Id.* Here we are asked to review whether the trial court properly held that the State had not opened the door to Dunlap's proffered testimony.

■
¶ 32. To determine whether the State opened the door, we apply the curative admissibility doctrine. Under the version of this doctrine that has been adopted in Wisconsin, when one party accidentally or purposefully takes advantage of a piece of evidence that is otherwise inadmissible, the court may, in its discretion, allow the opposing party to introduce otherwise inadmissible evidence if it is required by the concept of fundamental fairness to cure some unfair prejudice. *Bertrang,* 50 Wis. 2d at 706; *see also* 1 Wigmore, § 15 at 740–41 & n.6. For example, a litigant may introduce otherwise inadmissible evidence about hypnotically-refreshed testimony used to support an expert's opinion when the opposing party has opened the door by challenging the reliability of the facts on which the expert based the opinion. *State v. Coogan,* 154 Wis. 2d 387, 400, 453 N.W.2d 186 (Ct. App. 1990). Similarly, the doctrine has been used to allow evidence that a defendant was armed, even when the prosecution had made a pre-trial promise not to introduce such evidence, in order to cure the prejudice that arose when the defendant introduced extraneous evidence that the police officers had drawn their guns during the defendant's arrest. *United States*

*v. Bolin,* 514 F.2d 554, 558–59 (7th Cir. 1975). We now assess whether any evidence offered by the State opened the door.

¶ 33. We first address the holding of the court of appeals. In its decision, the court of appeals held that because the State's expert offered evidence regarding Jamie's behavior that was consistent with that of other sexual assault victims, it opened the door for Dunlap to explore other behavior exhibited by Jamie before the alleged assault that was common for sexual assault victims. *Dunlap,* 2000 WI App 251, ¶ 19. We refuse to make such a broad statement.[3] We have held that in limited circumstances, expert testimony about the consistency of a sexual assault complainant's behavior with victims of the same type of crime may be offered for the purpose of helping the trier of fact understand the evidence to determine a fact in issue, as long as the expert does not give an opinion about the veracity of the complainant's allegations. *State v. Jensen,* 147 Wis. 2d 240, 256, 432 N.W.2d 913 (1988). If we were to adopt the court of appeals' position, we would essentially force the State to choose between attempting to rehabilitate the complainant and allowing the admission of a complainant's sexual history in every sexual assault

---

[3] We note that the curative admissibility doctrine also limits what evidence can come through the door, once the door has been opened. In general, the inadmissible evidence should be allowed " 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.' " *United States v. Martinez,* 988 F.2d 685, 702 (7th Cir. 1993) (quoting *United States v. Winston,* 447 F.2d 1236, 1240 (D.C. Cir. 1971)). Since we find that the door was not opened in this case, however, we are not required to address the scope of admissibility.

case where the State seeks to explain the complainant's reporting behavior. This result would run counter to the legislature's purpose in enacting the rape shield law, and we refuse to promote such a consequence.

¶ 34. We think that Dunlap's alternative argument raises the more appropriate question here. Instead of arguing that all comparison evidence opens the door, Dunlap argues that some of the State's expert testimony about Jamie's behaviors fell outside of the scope of evidence allowed by our decision in *Jensen*. Dunlap argues that the testimony not covered by *Jensen* would have been otherwise inadmissible, and caused unfair prejudice in favor of the State. Dunlap concludes that this opened the door to his proffered evidence.

¶ 35. Dunlap points to two specific parts of Hanson's comparison testimony, which he asserts fall outside of the reach of *Jensen*. First, Dunlap challenges Hanson's testimony about Jamie's behaviors during their 1989 interview—fidgeting, kicking the table, and reticence to talk about the incident. Second, Dunlap challenges Hanson's testimony about Jamie's disclosure of the assault to her mother as being consistent with the behavior of sexual assault victims, who normally report an assault to a trusted person away from the site of the assault. Dunlap argues that these two pieces of evidence were offered only as substantive comparisons between Jamie's behavior and that of sexual assault victims and were not offered to assist the jury in its understanding of a fact in issue. Dunlap contends that the admission of this evidence caused unfair prejudice and required the trial court to admit the evidence of Jamie's past sexual behavior out of fundamental fairness.

¶ 36. We begin our analysis by determining whether or not the challenged evidence was admissible under *Jensen.* In *Jensen,* we held that expert testimony about the consistency of a sexual assault complainant's behavior with victims of the same type of crime may be offered for the limited purpose of helping the trier of fact understand the evidence to determine a fact in issue. *Jensen,* 147 Wis. 2d at 256; *see also State v. Huntington,* 216 Wis. 2d 671, 697–98, 575 N.W.2d 268 (1998). However, we held that an expert witness may not convey to the jury, either explicitly or implicitly, the expert's own beliefs about the veracity of the complainant's allegations with respect to the assault. *Jensen,* 147 Wis. 2d at 256–57.

¶ 37. For example, in *State v. Robinson,* this court allowed expert testimony from a rape crisis center worker, who offered information to explain the reporting behavior of a sexual assault complainant. The complainant was not crying after the assault and was able to write out her own statement to police shortly thereafter. *Robinson,* 146 Wis. 2d at 335. The expert witness testified that it was not uncommon, in her experience, for sexual assault victims to be emotionally flat after an assault. *Id.* at 333. This testimony was offered by the State after the defense had tried to capitalize on the misconception that all sexual assault victims are emotional following an assault. *Id.* at 335. This court held the testimony admissible because the witness's expert testimony assisted the jury in its fact-finding role and because the witness was not asked to draw any conclusions or offer any opinions about the complainant based on what the witness had observed in other sexual assault victims. *Id.* at 333.

¶ 38. Similarly, in *Jensen* itself, this court allowed a school guidance counselor to testify about whether the 11–year-old complainant's marked change of behavior at school—including asking precocious questions in a sex education class, wearing what was deemed by school officials to be inappropriate clothing, and pinching a boy's buttocks—was consistent with the behavior of other sexual assault victims. *Jensen,* 147 Wis. 2d at 244, 254. We noted that the counselor's testimony was offered to explain the context in which the complainant made her allegations and to rebut the defense's theory that the complainant had fabricated the charge against the defendant. *Id.* at 250. In *Jensen,* just as in *Robinson,* we noted that the defense had tried to use these behaviors to suggest that the complainant was lying. *Id.* at 251–52.

¶ 39. Applying the *Jensen* principles to the evidence challenged by Dunlap, we hold that Hanson's statements were admissible. We recognize that the line between substantive comparisons and comparisons offered for explanation is sometimes fine, but we hold that the testimony here fell within the boundaries of *Jensen*. During her direct examination, Hanson limited her testimony to a description of Jamie's reporting behavior. This included the concept that sexual assault victims may progressively disclose details of an assault; the concept that six-year-olds are often confused about the details surrounding an assault, including the general time frame of the assault and who was present; the concept that a six-year-old does not understand "in" and "out" when referring to their genitalia; the concept that a young sexual assault victim would most likely report the assault to a trusted person away from the scene of the assault; and the concept that fear, embarrassment,

or guilt might prevent the child from reporting immediately. Hanson's testimony explained the context in which Jamie reported the assault and helped rebut the defense suggestion that Jamie was fabricating her allegations against Dunlap. This was the type of testimony we recognized as admissible in *Jensen. Id.* at 250–51.

¶ 40. Hanson's testimony did not indicate, either implicitly or explicitly, her opinion regarding the veracity of Jamie's allegations. Likewise, the comparisons were not offered as substantive proof that Jamie had been sexually assaulted by Dunlap. Rather, they were offered to respond to the inconsistencies in Jamie's testimony that had been pointed out by the defendant on cross-examination and to explain the circumstances of Jamie's reporting behavior. Under *Jensen,* the testimony was therefore admissible.

¶ 41. Because Hanson's testimony fell within the bounds of *Jensen,* it was admissible and thus did not open the door to Dunlap's proffered evidence. The State's evidence was admitted for the purpose of rehabilitating Jamie and did not cause any unfair advantage to the State. The evidence that Dunlap offered therefore was not required to cure any prejudice and the circuit court did not err when it refused to admit the evidence.

### III

¶ 42. In sum, we hold that the evidence offered by Dunlap was properly excluded by the circuit court. Wisconsin Stat. § 972.11(2) bars the introduction of the evidence offered by Dunlap, and the evidence is not admissible under any statutory exception or under the narrow judicial exception articulated by this court in

*Pulizzano.* Additionally, the circuit court properly held that the State did not open the door to Dunlap's proffered testimony. For these reasons, we reverse the decision of the court of appeals and reinstate Dunlap's conviction.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 43. DIANE S. SYKES, J. (*concurring*). In Part II C of the majority opinion, the court concludes that because the child protective services investigator's expert testimony was *Jensen*[1] evidence, it did not "open the door" under the curative admissibility doctrine to the admission of evidence that was otherwise barred by the rape shield statute. I write separately because, in my view, the inapplicability of the curative admissibility doctrine does not depend upon a conclusion that the investigator's expert testimony was *Jensen* evidence.

¶ 44. In the first place, no one argued that the investigator's expert testimony was inadmissible or improper in any way. As a result, there was nothing to "cure" under the curative admissibility doctrine.

¶ 45. Second, the investigator's testimony was relatively routine opinion evidence, typical of many child sexual assault cases, concerning the consistency of the six-year-old victim's behavior in reporting the sexual assault with the reporting behavior of child sexual assault victims generally. The evidence the defendant sought to introduce, on the other hand, concerned certain alleged incidents of unusual, sexually inappropriate behavior by the victim that pre-dated the defendant's assault.

¶ 46. The defendant has not articulated any link whatsoever between the evidence he sought to intro-

[1] *State v. Jensen*, 147 Wis. 2d 240, 432 N.W.2d 913 (1988).

491

duce and that which was testified to by the protective services investigator. He has not demonstrated how the evidence, otherwise barred by the rape shield statute, would explain, cure, or correct the admission of the expert's testimony about common victim reporting behaviors, and there is no apparent connection between the two.

¶ 47. The suggestion seems to be (although this is mostly guesswork) that the allegations about the victim's earlier sexually inappropriate behavior shows that she had perhaps been sexually assaulted by someone else prior to the assault by the defendant. But this is pure speculation, and something more than conjecture or speculation is required before evidence barred for important policy reasons by the rape shield law will be admitted under the curative admissibility doctrine.

¶ 48. In any event, the investigator's expert testimony about the consistency of the victim's reporting behavior with that of other child sexual assault victims was not admitted as substantive circumstantial evidence that the assault by the defendant occurred, but, rather, as rehabilitative evidence to rebut the defense attack on inconsistencies in the victim's manner of reporting the assault. For reasons stated in greater detail in my concurrence in *State v. Rizzo*, 2002 WI 20, 250 Wis. 2d 407, 640 N.W.2d 93, also released today, I would conclude that this type of expert testimony is not, strictly speaking, *Jensen* evidence.

¶ 49. While the investigator's expert testimony was in part stated in the form of a *Jensen*-style consistency comparison, it was not similar in type to the expert testimony at issue in *Jensen,* which concerned a child sexual assault victim's post-assault sexually pre-

cocious "acting out" changes in behavior.[2] Expert testimony, like that of the investigator here, that explains a victim's reporting behavior in the context of the common reporting behaviors of sexual assault victims generally is admissible under *State v. Robinson,* 146 Wis. 2d 315, 431 N.W.2d 165 (1988), a case which heavily influenced this court's decision in *Jensen.*[3]

¶ 50. Accordingly, it is not necessary to characterize the expert testimony at issue in this case as *Jensen* evidence in order to conclude that it did not "open the door" to the evidence the defendant sought to introduce. For the reasons stated in my concurrence in *State v. Rizzo,* 2002 WI 20, I would not do so, and therefore respectfully concur.

---

[2] *Jensen,* 147 Wis. 2d at 248–49.

[3] *Jensen,* 147 Wis. 2d at 251–52.