In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1867

CHARLES R. CIANCIOLA,

*Petitioner-Appellant,*

*v.*

MIKE DITTMANN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 1264—**Aaron E. Goodstein,** *Magistrate Judge.*

ARGUED OCTOBER 27, 2009—DECIDED JANUARY 28, 2010

Before EASTERBROOK, *Chief Judge*, and EVANS and
WILLIAMS, *Circuit Judges*.

EVANS, *Circuit Judge.* Charles Cianciola was convicted
of sexual assault of a child by Wisconsin state juries in
both Milwaukee and Outagamie Counties. In the Milwau-
kee case, which was tried first, Cianciola was sentenced
to a term of 12 years in prison. The Outagamie County
trial followed, and in 2002 he received a 15-year sen-
tence consecutive to the 12 he was already serving. This

appeal, arising from the conviction in Outagamie County, contests the district court's denial of Cianciola's petition for a writ of habeas corpus. His petition asked the district court to return his case to state court for a new trial.

Cianciola's habeas petition hinges on a claim that he was denied his Sixth Amendment rights to the effective assistance of counsel. The state trial judge rejected that claim (and others) during postconviction proceedings, and the Wisconsin Court of Appeals affirmed that ruling in 2004. The Wisconsin Supreme Court declined to review the case.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we evaluate the decision of the last state court to adjudicate a habeas petitioner's claim. *Starkweather v. Smith*, 574 F.3d 399 (7th Cir. 2009). We may grant relief to a petitioner only if the state court ruling on a federal constitutional claim was based on an unreasonable view of the facts or was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 376-77 (2000).

The standard for considering Cianciola's ineffectiveness claim is the well-known one announced in *Strickland v. Washington*, 466 U.S. 668, 688 (1984). How well-known? Well, even though *Strickland* was decided 25 years ago, we cite it often—over 50 times in published opinions over the last three years. In the jury trial context, *Strickland* requires a habeas petitioner to show that his state trial counsel's performance was objectively unreasonable and that counsel's errors affected the

verdict. In short, *Strickland* demands that a petitioner satisfy both a performance and a prejudice standard. We will return to this later, but first, the facts.

The alleged victim of the sexual abuse in the case was Cianciola's daughter, who we will call Jane. She lived with her mother but had visitations with Cianciola at his home in Appleton, Wisconsin, the county seat of Outagamie County. Jane testified that Cianciola touched her breasts and vagina while she was lying on her bed during a visitation in August 1999. She testified that similar incidents happened at other times, beginning when she was six or seven. One of those incidents occurred during a trip to Milwaukee to see a hockey game. During that incident, she said, her father had the smell of alcohol on his breath.

Jane testified that her father touched her, inappropriately, almost every time she visited him in Appleton. She also said Cianciola threatened to kill her or her mother if she ever told anyone about the assaults. A police officer also testified that Cianciola said the assaults could have happened "maybe if [I] was totally blacked out." The officer also testified that he detected the smell of alcohol on Cianciola during the interview.

Although we are concerned here with Cianciola's federal claim under the Sixth Amendment, we pause now to briefly discuss how Wisconsin law handles expert testimony in child sexual assault cases.

Before the trial got underway, Cianciola's counsel asked the court to order that Jane submit to a psychological examination by a defense expert. That request was consis-

tent with Wisconsin law which endeavors to "level the playing field" when the State intends to call an expert (in this case a therapist named Beth Young-Verkuilen) to testify that the victim's behavior was consistent with the behavior of other children who have been sexually assaulted. *State v. Maday*, 179 Wis. 2d 346 (Wis. App. 1993). Because the State indicated that it wanted to elicit testimony of that nature from its expert, the trial court expressed its intent to grant the defense motion for an independent examination.

Wisconsin law, however, does not force a child in a sexual assault case to comply with the order to submit to a court-ordered examination by a defense expert. But if she declines, the prosecution "may not introduce evidence of the behavior of the victim through its examining expert." *Maday*, 179 Wis. 2d at 361-62. Because Jane's family did not want her to submit to the defense expert's examination, the prosecution advised the court that it would not elicit the therapist's expert comparison of Jane's behavior to the behavior of other sexual assault victims.

Now back to the facts. After Jane testified, the prosecution asked the court to allow her therapist to testify about the reasons a child might delay reporting a sexual assault for two-and-a-half years and why she might continue to visit with the man who molested her. The State argued that the defense opened the door to that testimony by cross-examining Jane about those issues. The court agreed that the door was opened with respect to both issues. The court ruled that the expert could

provide testimony as to the behavioral patterns of child sexual assault victims.

This ruling was consistent with Wisconsin law, which holds that the cross-examination of a child witness which suggests that she is fabricating a sexual assault accusation, including examination about the child's behavior toward the defendant and about the child's delay in reporting the alleged assault, may be countered by expert testimony explaining why child victims of sexual assault often act in those ways. *State v. Dunlap*, 250 Wis. 2d 466 (1998) (when defense tried to use child's behaviors to imply that she was lying, expert was properly permitted to testify about reasons children delay reporting, among other behaviors). Today, Cianciola's appellate counsel argues that trial counsel failed to anticipate that his cross-examination strategy would open the door to Young-Verkuilen's expert testimony and that he also failed to have an expert of his own available to counter Young-Verkuilen's testimony.

In making his preliminary ruling, the state trial judge warned Cianciola that any evidence indicating that Cianciola and Jane had a "normal" relationship during the period of abuse would open the door for the State to challenge that implication with whatever evidence it had on the matter.

Despite this warning, Cianciola's counsel brought out on his cross-examination of Jane that she continued to visit her father voluntarily during the period of abuse and that she did not report the assaults for years. Therefore, the State was allowed to put on two expert witnesses,

including Young-Verkuilen, to testify that delayed reporting and a continued willingness to visit the perpetrator are common characteristics of sexual assault victims. Jane's counselor noted that delayed reporting is probably *more* common than immediate reporting and that if the perpetrator is a parent, the relationship between the perpetrator and the victim may even strengthen. The trial court did not allow the State's witnesses to offer expert conclusions with respect to Jane specifically, but of course the jurors could easily make the connection from victims in general to Jane in particular. The State's experts likely bolstered Jane's credibility as their testimony implied it was not unusual for her to continue visiting her father and not disclose the abuse until years after it began.

Cianciola's trial attorney made little attempt to cross-examine the State's experts on the issues of delayed reporting or voluntary return to the perpetrator; nor did he retain an independent expert. Cianciola claims that these failures denied him his Sixth Amendment right to the effective assistance of counsel.

As we noted, *Strickland* requires a showing of both deficient performance and prejudice. To satisfy the performance prong, a petitioner must show that his attorney's representation fell below minimal professional standards. To establish prejudice, a petitioner must show that there is a reasonable probability that the result of the trial would have been different but for counsel's shortcomings. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

In rejecting Cianciola's claim, the Wisconsin Court of Appeals relied primarily on the prejudice prong. Because that is the shortest path we can take to the end of our opinion, we will focus solely on that issue. The bottom line is that Cianciola falls far short of establishing that he was prejudiced by anything his trial counsel did or didn't do.

Prejudice occurs when the lawyer's errors undermine confidence in the outcome. The Wisconsin Court of Appeals found that counsel's failure to challenge the State's expert testimony was not prejudicial. Applying AEDPA, we believe this was a reasonable application of *Strickland*. A police officer testified that Cianciola said the assaults could have happened if he was "totally blacked out." Although not a "confession," this sort of statement would most likely carry great weight with the jury. Plus, the officer also testified that he smelled alcohol on Cianciola's breath during the interview. Further, Cianciola himself testified that he had been treated for alcohol abuse and had done a stint at the Betty Ford Treatment Center a year before the trial.

Defending family sexual assault cases like this is an extremely difficult task for any attorney. Once a young girl gives courtroom testimony about a history of abuse by a father, absent some evidence that she's told tall tales before on other important matters (and there was not such credible evidence about Jane), an acquittal is usually unlikely. And here, the State had something more: two of Jane's friends (Kayla Thompson and Ashley Calhoun) testified that Jane told them, separately, that

her father touched her inappropriately and "molested" her at a hotel, in his home in Appleton, and at her grand-parents' house.

So, what we had here was testimony about years of abuse. Cases of this sort mostly turn on the credibility of the victim, and there just isn't any indication here that Jane was anything other than credible. True, the State's experts may have bolstered her credibility, but we see no way that either more vigorous cross-examination or a defense expert to counter the State's case would have come close to tipping the jury in the direction of an acquittal.

For these reasons, the judgment of the district court is AFFIRMED.