**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 22, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP710-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017CF49

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

MICHAEL L. BRANTNER,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Buffalo County:    JAMES J. DUVALL and RIAN W. RADTKE, Judges. *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM. Michael Brantner appeals a judgment, entered upon a jury's verdict, convicting him of one count of repeated sexual assault of the same child, contrary to WIS. STAT. § 948.025(1)(b) (2017-18),[1] and an order denying his postconviction motion for a new trial.[2]  Brantner argues the circuit court erred by excluding evidence that supported his defense.  Brantner also contends that his trial counsel was ineffective by failing to impeach a State's witness with his prior convictions.  Brantner alternatively claims that the cumulative effect of these claimed errors entitles him to a new trial.  We reject Brantner's arguments and affirm the judgment and order.

## BACKGROUND

¶2  In the spring of 2017, then fifteen-year-old Charlotte[3] told multiple friends and a school guidance counselor that Brantner had been sexually assaulting her for nearly three years.  During a video-recorded forensic interview at the Eau Claire Child Advocacy Center, Charlotte reported that Brantner had first assaulted her when she was twelve or thirteen years old, and that he had continued to assault her on a regular basis since that time.

¶3  Charlotte's cell phone contained sexually suggestive text messages from Brantner.  For example, in response to Charlotte's message asking when Brantner would be home, Brantner texted, "God soon I am drunk and u can sleep

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The Honorable James J. Duvall presided at trial and imposed the sentence.  The Honorable Rian W. Radtke reviewed and decided the postconviction motion.

[3] In compliance with the policy underlying WIS. STAT. RULE 809.86(4), we refer to the victim and her family members, other than Brantner, by pseudonyms.

with me." On another occasion, Brantner texted Charlotte to "[t]ake a shower please or wait for me." When Charlotte asked why, Brantner replied, "I want u clean I will take one when I get home." During a third exchange, Brantner asked Charlotte if she wanted "a little captain" when she got home—which Charlotte clarified referred to Captain Morgan rum. When Charlotte responded that it was too hot, Brantner replied, "Well it will be I guess." When Charlotte sought clarification of that message, Brantner replied, "Friction."

¶4 When police confronted Brantner with Charlotte's allegations, he conceded that he occasionally slept in the same bed with Charlotte, but he suggested that her accusations were in retaliation for Brantner having taken her electronics away that morning. During the execution of a search warrant, sex toys and lubricants were found in Brantner's and Charlotte's respective bedrooms. Testing of the sex toys showed the presence of DNA from both Brantner and Charlotte. Police also found a notebook in Charlotte's room that included descriptions of some of Brantner's assaults, with details that were consistent with information provided by Charlotte during her forensic interview.

¶5 The State charged Brantner with one count of repeated sexual assault of a child. After learning that Charlotte tested positive for two sexually transmitted diseases (STDs)—trichomoniasis and genital herpes—the State requested that Brantner be tested for HIV and other STDs. In its request, the State noted that Charlotte claimed Brantner was the only person with whom she had intercourse. Over Brantner's objection, the circuit court determined the State could proceed with testing. After Brantner tested negative for trichomoniasis and genital herpes, the State moved to exclude any reference to the test results for Brantner or Charlotte. The court excluded the STD evidence over Brantner's objection.

¶6     At trial, the jury saw the video of Charlotte's forensic interview. Charlotte then testified that in 2014, she told her mother that Brantner had been touching her inappropriately, but she recanted the allegation because she did not want to get Brantner in trouble. Charlotte further testified that in 2017, she discussed the Brantner assaults with friends and, at their urging, reported the assaults to the school guidance counselor. Charlotte testified regarding Brantner's suggestive text messages. She also testified that from 2014 until the time she reported the assaults to her guidance counselor, Brantner would have sexual contact with her approximately every two weeks. Charlotte testified that there were at least three instances of penis-to-vagina intercourse with Brantner, at least three instances of oral sex, at least three times when Brantner held her down to assault her, and at least three times when she told him to stop and he did not.

¶7     The State presented various witnesses whose testimony corroborated aspects of Charlotte's testimony, including one of the friends with whom she confided and the school guidance counselor to whom she reported the assaults. Charlotte's therapist, Krista Lapp, opined that Charlotte suffered from post-traumatic stress disorder ("PTSD") based on her reported symptoms, including self-harm behaviors, flashbacks, recurrent dreams, difficulty concentrating, and feelings of guilt and anger. An expert witness, psychologist Anna Salter, testified that a child's delay in reporting sexual assault is a common phenomenon, supported by research on the subject. Doctor Salter described some of the reasons a child would delay reporting, especially when the abuser is a family member. She further testified that when a child does report a sexual assault, it is usually reported to "a friend who they swore to secrecy." Salter additionally confirmed that PTSD is a common result of child sexual abuse. The State also presented testimony of several individuals involved in the investigation

of Charlotte's allegations, including testimony regarding the DNA results from the material evidence.

¶8    The jury found Brantner guilty of the crime charged, and the circuit court ultimately imposed a thirty-five-year sentence consisting of twenty-five years' initial confinement and ten years' extended supervision. Brantner's postconviction motion for a new trial was denied after a hearing, and this appeal follows.

## DISCUSSION

¶9    Brantner argues the circuit court erred by excluding the STD evidence. The admissibility of evidence lies within the circuit court's sound discretion. *State v. Pepin*, 110 Wis. 2d 431, 435, 328 N.W.2d 898 (Ct. App. 1982). We will uphold an evidentiary ruling if we conclude the circuit court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Walters*, 2004 WI 18, ¶14, 269 Wis. 2d 142, 675 N.W.2d 778.

¶10    Brantner argues the STD evidence was admissible as evidence of Brantner's innocence, based on the theory that he would have contracted the diseases if he had sexual contact with Charlotte.[4] Wisconsin's rape shield law,

---

[4] In the circuit court, Brantner also argued the evidence was admissible to impeach Charlotte's claim that she had not had intercourse with anybody else. His postconviction motion also argued that the circuit court improperly assessed costs against Brantner for witness fees. Because he has not renewed these arguments on appeal, we need not address them. *See Post v. Schwall*, 157 Wis. 2d 652, 657, 460 N.W.2d 794 (Ct. App. 1990) ("Arguments raised but not briefed or argued are deemed abandoned by this court.").

WIS. STAT. § 972.11, excludes any evidence of a complaining witness's prior sexual conduct, regardless of the proffered purpose, unless the evidence falls within one of three enumerated statutory exceptions or one judicially created exception. *See **State v. Dunlap*** 2002 WI 19, ¶¶16-19, 250 Wis. 2d 466, 640 N.W.2d 112. The rape shield law serves "to counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations." ***State v. Ringer***, 2010 WI 69, ¶25, 326 Wis. 2d 351, 785 N.W.2d 448 (citation omitted). "The law reflects the legislature's determination that evidence of a complainant's prior sexual conduct is largely irrelevant 'or, if relevant, substantially outweighed by its prejudicial effect.'" ***Id.*** (quoting ***State v. Pulizzano***, 155 Wis. 2d 633, 644, 456 N.W.2d 325 (1990)).

¶11 Brantner does not dispute that the STD evidence falls within the scope of the rape shield law. Rather, he argues that the evidence was admissible under the statutory exception for evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered. *See* WIS. STAT. § 972.11(2)(b). We disagree. Brantner claims he would not have used the STD evidence to argue that Charlotte had sexual intercourse with anyone else—only that he did not transmit the diseases to Charlotte. Brantner, therefore, was not attempting to present evidence of the source of the diseases but, rather, the contrary proposition; that he was not the source. This line of argument falls outside the statutory exception.

¶12 Brantner nevertheless cites ***State v. Jacobs***, 811 S.E.2d 579 (N.C. 2018), to support his position. There, the North Carolina Supreme Court concluded that the trial court's exclusion of STD evidence violated that state's statute creating an exception to the rape shield law for "evidence of specific

instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant." *Id.* at 582. Although Brantner concedes that Wisconsin's rape shield law does not contain the same provision, he urges the same outcome in this case because of the "striking" factual similarity. We are not persuaded. North Carolina's statutory exception is not available under Wisconsin law; therefore, any factual similarity between *Jacobs* and this case is irrelevant.

¶13 Brantner alternatively contends the evidence was admissible under the judicial exception to the rape shield law articulated by our supreme court in *Pulizzano*. *See Pulizzano*, 155 Wis. 2d at 651. That exception weighs a defendant's due process right to present a defense against the State's interest in protecting the complainant from prejudice and irrelevant inquiries. *See Dunlap*, 250 Wis. 2d 466, ¶20. Brantner claims the STD evidence tended to show his innocence because it was likely he would have contracted an STD from Charlotte if he had assaulted her. To meet the *Pulizzano* test, a defendant must show that the proffered evidence satisfies five criteria: (1) the prior acts must have clearly occurred; (2) the prior acts must closely resemble those of the present case; (3) the prior acts must be clearly relevant to a material issue; (4) the evidence must be necessary to the defendant's case; and (5) the probative value of the evidence must outweigh its prejudicial effect. *Dunlap*, 250 Wis. 2d 466, ¶21. If the five criteria are met, the court must then balance the parties' interests to determine if the evidence is admissible. *Id.*

¶14 With respect to the first criterion, the STD evidence does not show that the prior acts—i.e., Charlotte having sexual contact with someone else—clearly occurred. At the hearing on the State's motion to exclude the STD evidence, the State argued that according to a medical expert, genital herpes is not

necessarily spread through sexual contact with another. Although the same expert relayed that trichomoniasis is transmitted only by sexual contact, the carrier can be asymptomatic for a prolonged period of time and the disease can resolve without treatment. As the circuit court noted at the motion hearing, there was an absence of proof that a negative test meant Brantner never had an STD. Therefore, the proffered evidence created only speculation that Charlotte had sexual contact with another person.

¶15 Turning to the second criterion, the STD test results do not provide any information about how or when Charlotte contracted the diseases. Therefore, Brantner cannot show a similarity to this case, other than at least one of the diseases must have been contracted by sexual contact.

¶16 Brantner likewise fails to satisfy the third, fourth, and fifth criteria. Because the STD evidence does not establish that Brantner did not assault Charlotte, he cannot show that the evidence is relevant, necessary, or probative. Therefore, the circuit court did not erroneously exercise its discretion by excluding the STD evidence.

¶17 Next, Brantner argues that the ineffectiveness of his trial counsel for failing to impeach a witness warrants a new trial. This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. *Id.* However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law that this court reviews independently. *Id.*

¶18 To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one. *See id.* at 697.

¶19 In order to establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. A defendant proves prejudice by demonstrating there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing *Strickland*, 466 U.S. at 693). Thus, "a defendant need not prove the jury *would have* acquitted him [or her], but he [or she] must prove there is a *reasonable probability* it would have, absent the error." *Id.*, ¶46.

¶20 Here, Brantner's postconviction motion alleged his trial counsel was ineffective by failing to impeach one of the State's witnesses with his prior convictions. The witness, Eric Pittman, had an extramarital affair with Charlotte's mother, Barbara, in 2014. Pittman testified that at that time, Barbara told him she "was concerned because she saw [Brantner] coming out of Charlotte's room naked." Barbara testified that she told Pittman she was concerned that Charlotte and Brantner spent too much time together "camping and traveling at night," but

9

she denied telling Pittman that she witnessed Brantner leaving Charlotte's room naked. Barbara surmised that Pittman made this claim to authorities because he wanted her to leave Brantner and rekindle a relationship with Pittman.

¶21 Even assuming that counsel's failure to impeach Pittman was deficient performance, Brantner fails to establish that this deficiency was prejudicial. As an initial matter, it is unclear how many of Pittman's prior convictions would have been admissible for impeachment purposes. In any event, Pittman's credibility was already at issue, as the jury heard testimony confirming the extramarital affair and Barbara's theory that Pittman wanted to reestablish his relationship with her. Moreover, Pittman's testimony was miniscule in the overall context of the three-day trial. Between direct and cross-examination, Pittman answered a total of only eleven questions, and his testimony, at most, related to only one of many sexual assault allegations against Brantner. Given Charlotte's testimony and the corroborating evidence, Brantner has not demonstrated a reasonable probability the jury would have acquitted him had trial counsel impeached Pittman's credibility with prior convictions.

¶22 Finally, Brantner asserts that the cumulative effect of these claimed errors warrants a new trial. This is, essentially, a claim for a new trial in the interest of justice under WIS. STAT. § 752.35. We have rejected Brantner's challenges to his conviction, and "[a]dding them together adds nothing. Zero plus zero equals zero." *See **Mentek v. State***, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976). Accordingly, we decline to grant Brantner a new trial.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

10