MEDVED, Respondent, v. MEDVED, Appellant.

*April 26—June 1, 1965.*

For the appellant there was a brief and oral argument by *Paul Medved* of Muskego, *pro se.*

For the respondent there was a brief by *Hippenmeyer & Reilly* and oral argument by *Dale W. Arenz,* all of Waukesha.

CURRIE, C. J. Defendant's brief and oral argument raised no question with respect to the merits of the judgment, but were directed to the issue that he should be awarded a new trial. He contends he is entitled to a new trial because of the incompetence of the three lawyers he had represent him in different stages of the litigation, and the action of the circuit court in insisting on the trial taking place at a time when defendant was unprepared.

Sec. 270.49 (3), Stats., provides, "All motions for new trials shall be reduced to writing and filed before being heard." Defendant filed no motion for new trial in the circuit court. This failure precludes him from arguing in this court as a matter of right that he is entitled to a new trial. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380. However, as a matter of our discretion we may entertain such a contention, and we exercise our discretion to do so in view of the fact that defendant has not been represented by counsel since some time in the latter part of June, 1963, when he discharged his last attorney.

Much of defendant's brief is devoted to his contention that the attorneys employed by him had not competently represented him. For the most part appellant's contentions are wholly immaterial to the issue before us. For example, one of defendant's complaints against the last counsel employed was that he refused to bring an action of false arrest against the sheriff and others instrumental in the defendant's in-

carceration for contempt because of his failure to comply with the order for payment of temporary alimony and support money. It is quite apparent that defendant and his attorneys disagreed on the strategy to be pursued and defendant was unwilling to follow their advice. No claim is made that any acts of his attorneys had prevented defendant from being prepared for trial on August 8, 1963. Defendant had discharged his last attorney the latter part of June, 1963. It was incumbent upon him either to employ other counsel, or to make whatever preparations he deemed advisable if he intended to act without counsel. Discharge of counsel in a civil action is generally held not to entitle a party to a continuance as a matter of right but a requested continuance for this reason rests in the sound discretion of the trial court. Withdrawal or discharge of counsel in civil case as ground for continuance. Anno. 48 A. L. R. (2d) 1155, and cases cited therein.

In *Benson v. Benson* (1949), 66 Nev. 94, 204 Pac. (2d) 316, defendant wife, after a divorce action was set for trial and a month's advance notice of the trial date had been given, discharged her attorneys. On the day before trial she retained another attorney. On the following day he moved the court for a continuance. The court held that the trial court did not abuse its discretion in denying the continuance since the necessity the wife found of engaging new counsel the day before the trial was due entirely to her own negligence and lack of diligence. In the instant case the appellant's position is aggravated by manifest obdurateness and belligerence. As is pointed out in *Flynn v. Fink* (1923), 60 Cal. App. 670, 673, 213 Pac. 716, the practice of granting continuances because substitution of counsel "if permitted and if persisted in, might and probably would in many cases work the destruction of private rights of the opposing litigant and would be subversive of the 'prompt

administration and execution of the laws—upon which depends largely their effectiveness.' "

The only issue raised by defendant which really merits our consideration is whether it was an abuse of discretion for the circuit court to have proceeded with the trial on August 8th when it was obvious that defendant was wholly unprepared to proceed. We have no hesitancy in holding that there was no abuse of discretion. As the trial court pointed out to defendant, the action had been pending for more than a year and three months and defendant had been adequately notified well in advance of August 8th that the trial would take place on that day. The trial court was well warranted in concluding that defendant's failure to be prepared to proceed was wholly due to defendant's own fault or deliberate choice.

While defendant has not attacked the judgment we have reviewed the record to ascertain whether any miscarriage of justice has occurred which would warrant us to exercise our discretionary power under sec. 251.09, Stats., to modify the judgment or remand for further action by the trial court. We conclude that there has been no miscarriage of justice and the record amply sustains the judgment in every particular.

Plaintiff testified that defendant struck her several times; called her filthy names; questioned the paternity of their youngest child; threatened to murder her; did not support her or her newborn child; and that his conduct had caused her to become a complete nervous wreck. The twenty-one-year-old daughter of the parties corroborated this testimony of plaintiff. Defendant interjected statements during the trial which also furnished corroboration in certain respects. Three times in these statements he characterized plaintiff as a "slob," and, after plaintiff had testified with respect to his threat to murder her, he declared, "I should have

killed you." He also admitted when questioned by the court that he had struck plaintiff once and had called her names.

Cruel and inhuman treatment has been defined for purposes of divorce in *Gordon v. Gordon* (1955), 270 Wis. 332, 340, 71 N. W. (2d) 386, as follows:

". . . treatment which does or is well calculated to impair the health of a party, makes the marriage state intolerable and renders a party incapable of performing his or her duties in married life, satisfies the 'cruel and inhuman treatment' referred to in the statute."

Defendant's acts of improper conduct toward plaintiff are clearly embraced within this definition and support that part of the judgment which decreed a legal separation.

The property of the parties consists of a residence of the value of $16,860; furniture of the estimated value of $500; $200 to $300 in a savings account; a 1956 Buick automobile; a $1,000 life insurance policy on plaintiff; and a $5,000 life insurance policy on defendant. The only liabilities were $430 of unpaid real-estate taxes and some arrearages on defendant's part in paying temporary alimony and support money. The judgment made this division of estate: The residence was awarded to defendant subject to a $5,000 mortgage given plaintiff which is to become due after three years without interest, but which is to bear five percent interest per annum after due date; each party was awarded the items of furniture in his or her possession; the automobile was awarded to defendant; and each was awarded the life insurance on his or her life.

Thus plaintiff received slightly under 33⅓ percent of the aggregate value of the net estate. The parties had been married for twenty-five years and the property division if anything favored defendant rather than plaintiff under the established principles laid down by this court. See *Wagner v. Wagner* (1961), 14 Wis. (2d) 23, 27, 28, 109 N. W.

(2d) 507; *Kronforst v. Kronforst* (1963), 21 Wis. (2d) 54, 61, 123 N. W. (2d) 528.

Defendant's take-home pay after deductions is $90 per week. We find no abuse of discretion in the award of $35 per week support money and $15 per week alimony made by the judgment.

We wish to praise the calm, patient, fair, and yet firm manner in which the learned trial judge conducted this trial in spite of the provocative, disrespectful, and belligerent conduct of defendant. At the commencement of the trial defendant stated, "I came up here specifically to say there won't be a trial." Shortly thereafter before a witness had been sworn, the following interchange took place between the court and defendant:

"*Court:* Very well. We are going to go ahead with the trial.

"*Mr. Medved:* I won't cooperate. You might as well put me in jail, because I said there isn't going to be a trial.

"*Court:* We are going ahead.

"*Mr. Medved:* There won't be any."

Thereafter plaintiff took the stand and had answered the first question put to her, which was to state her name, when defendant interjected this statement:

"I warn you, this is going to the Supreme Court. I will not take this. I have been in Court on January 17th and the lawyer allowed me to be railroaded. I demand that you stop. There will not be a trial."

Several times during plaintiff's testimony defendant interrupted to volunteer statements castigating plaintiff. Near the end of the trial the court informed defendant of the amount of support money and alimony which would be included in the judgment and defendant defiantly stated, "There is not a chance. I won't pay a penny, if I sit the

rest of my life in jail." The trial concluded with this further interchange:

"*Mr. Medved:* I say these proceedings are illegal, and I demand I have the right to appeal the case.

"*Court:* You have that right.

"*Mr. Medved:* How can I pay to go to the Supreme Court when you railroaded me today? That is the way you railroad a man. . . . I say a man has rights too, and I would like to fight for my equal rights.

"*Court:* The Court has considered your rights.

"*Mr. Medved:* You have not. I have been denied my rights for the last year and a half, and I will not cooperate with the Court one bit.

"*Court:* That is all."

As the Iowa court well stated in *Neiderhiser v. Neiderhiser* (1963), 254 Iowa 791, 799, 119 N. W. (2d) 245:

"A trial court has the right to control and conduct its court in an orderly, dignified and proper manner. It is not obligated on the basis of failure to be represented by counsel, to be subject to the whims, surliness, idiosyncrasies and indignity of litigant. 5 Am. Jur., Attorneys at Law, sections 39, 40; 45 A. L. R. 1142; 48 A. L. R. 2d 1160; 53 Am. Jur., Trial, sections 24, 25 and 34."

*By the Court.*—Judgment affirmed.