STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas A. ROBINSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 87–0280–CR. Argued September 8, 1988.—Decided November 9, 1988.*

(Also reported in 431 N.W.2d 165.)

For the defendant-appellant-petitioner there were briefs by *Robert R. Flatley* and *Will & Flatley,* Green Bay, and oral argument by *Robert R. Flatley.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

LOUIS J. CECI, J. This is a review of an unpublished decision of the court of appeals, *State v. Robinson,* dated September 22, 1987, which affirmed a judgment and order of the circuit court for Brown county, Alexander R. Grant, circuit judge. The appeal was from a judgment of conviction of the defendant for first-degree sexual assault under sec. 940.225(1)(b), Stats.,[1] and for theft under sec.

---

[1] "940.225 Sexual assault. (1) First degree sexual assault. Whoever does any of the following is guilty of a Class B felony:

" . . .

"(b) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to

943.20(1)(a), Stats.[2] The defendant also appealed the circuit court's order denying his motion for a new trial. Three issues are presented for review. The first issue is whether the circuit court properly excluded evidence of the complainant's pregnancy. The second issue is whether the circuit court properly permitted a rape crisis center worker to testify as an expert witness. The third issue is whether a new trial should be granted in the interest of justice. The court of appeals concluded that the circuit court did not abuse its discretion in making its evidentiary rulings and, therefore, affirmed the judgment and order. We affirm the decision of the court of appeals.

The facts revealed by the record are as follows. On October 8, 1985, the defendant received a withheld sentence and was placed on five years' probation for a previous first degree sexual assault conviction involving a minor. In addition to his probation term, the defendant was to receive one year in the Brown county jail, with work release privileges, which was to commence on October 21, 1985. The incident which led to the sexual assault conviction before this court happened on October 14, 1985, at approximately 10:00 a.m. The assault occurred as the complainant was walking through a garage attached to her apartment building to her vehicle which was parked outside the garage. The complainant was grabbed from behind by the defendant, who choked her and threatened her with what she believed was a knife. The defendant then pushed the complainant through a door in the garage into the basement of her apartment building.

lead the victim reasonably to believe it to be a dangerous weapon."

[2]The defendant's conviction for theft is not before this court.

Once inside the basement, the defendant tied the complainant's wrists together with an electrical cord and secured the cord to a couch located in the basement. The defendant then wedged a piece of wood against the handle of the door leading into the basement. He then returned to the complainant, untied her hands, and sexually assaulted her orally and vaginally. At the time of the assault, the complainant was pregnant. Following the assault, on October 14, 1985, at approximately 12:45 p.m., the defendant took an automobile from an automobile dealer for the expressed purpose of test-driving the vehicle. The defendant then fled the jurisdiction with the vehicle, which was later recovered in the state of Ohio.

The defendant had known the complainant for six to seven months prior to the assault. During this period, the defendant and the complainant had engaged in sexual relations. The complainant had ended her relationship with the defendant three to four weeks prior to the assault. On March 11, 1986, the defendant was found guilty of first degree sexual assault for the above-described offense. On May 9, 1986, the defendant was sentenced on the sexual assault charge for an indeterminate term of not more than twenty years.

At the circuit court level, two evidentiary disputes arose. The first occurred on the morning of the trial when the state filed a *motion in limine,* citing sec. 972.11, Stats., asking the court to prohibit the defense from questioning any of the state's witnesses regarding the complainant's pregnancy. In response to the motion, the defense counsel explained why he wanted to question the state's witnesses regarding the complainant's pregnancy:

"The medical records show as to the pregnancy test that it is positive, showing the possibility that the young lady was pregnant. The question arises, was there—were there any conversations between my client and the alleged victim as to pregnancy prior to this alleged sexual assault.

"Now, I, without divulging what my client [will state] or trying not to, if he takes the stand, there is no question that there were conversations about pregnancy, and I feel that I should be allowed to question the alleged victim as to whether those conversations took place prior to the alleged sexual assault, because I feel it's important to show the question of phone calls that were made, conversations that were made between my client and the alleged victim as to the question of abortion and the question of whether she was bearing Mr. Robinson's child prior to this alleged sexual assault, and I think it's very important that the jury be allowed to hear it."

The circuit court noted that sec. 972.11(2)(b), Stats.,[3] prohibits any questions concerning the com-

[3]"972.11 Evidence and practice; civil rules applicable. . . .
"(2) . . .
"(b) If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):
"1. Evidence of the complaining witness's past conduct with the defendant.
"2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.
"3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness."

321

plaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct with any person other than the defendant. The circuit court also noted that sec. 971.31(11) provides: "In actions under s. 940.225, evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial." Therefore, the circuit court held that evidence of the complainant's pregnancy at the time of the assault was not material to a fact at issue in this case because the defendant was not charged with any degree of sexual assault in which it was necessary to prove specific instances of sexual conduct to show the source or origin of semen, pregnancy, or disease, so as to be admissible under sec. 972.11(2)(b)2. Consequently, the circuit court granted the state's motion to exclude the defense from questioning any of the state's witnesses regarding the complainant's pregnancy.

The second evidentiary dispute at trial related to the testimony of a worker from a rape crisis center. The worker had met the complainant at the hospital and testified about both her observations of the complainant and her observations of other sexual assault victims, based upon her experience working at the rape crisis center. The prosecutor asked the following questions and received the following answers from this witness:

> "Q What did you observe with regard to [the complainant] when you arrived at the hospital?

"A The first thing I observed was that [the complainant] was extremely pale, very agitated, she was trembling, on the verge of possible hysteria.

"Q Did she appear frightened to you?

"A Extremely frightened, yes, uncommunicative.

"Q Did she express any fear of retaliation from the defendant?

"A Yes, it seemed to be upper-most on her mind.

"Q What is the function of a rape crisis worker in that sort of situation?

"A Basically our function is to be an advocate for the victim, just give them emotional support, if they need information, or anything possibly. We are there to provide for them.

"Q Do you make an effort to explain what their legal options are, for example?

"A Yes.

"Q Is there some effort made to explain the intricacies of the legal system to them?

"A Right.

"Q In your conversations or dealing with [the complainant], did she ever express to you a [sic] reservations or doubts about cooperating with the police and prosecuting this particular case?

"A No.

"Q Have you in your experience or in working with the Rape Crisis Center observed something that was referred to as the rape trauma syndrome?

"A Yes.

323

"Q Is it uncommon in your experience for a victim of a sexual assault in the time period immediately following the assault to emotionally be very flat or appear to the just emotionally dead even?

"A Very often."

At this point, the defense counsel objected regarding the form of the question as to people other than the complainant. Defense counsel stated that he did not mind the prosecutor questioning the worker about the complainant, but had to object to the general question. In response, the prosecutor claimed that this witness was an expert, and he then proceeded to qualify her as such by asking her about her experience. This witness stated that she had worked at the center for six years and had dealt with seventy to eighty sexual assault victims. The prosecutor then asked the witness the following questions:

"Q I believe the question was before we got started on this other business, if it was uncommon or common, or whatever term you care to use, in your experience for a sexual-assault victim to be emotionally flat immediately after the assault?

"A Yes, it's very common.

"Q Does that often change in the period of, you know, hours or days or weeks after the assault?

"A Yes, it does.

"Q So that apparent shift in emotions are relative calmness to agitation is something you see very commonly?

"A Right."

The court of appeals rejected the defendant's evidentiary objections and affirmed the defendant's conviction. The court held, in regard to the issue of whether evidence of the complainant's pregnancy was properly excluded, that under sec. 901.03(1)(b), Stats.,[4] a party must make an offer of proof concerning the substance of the excluded testimony to preserve the issue for appeal. While the offer need not be stated with complete precision or unnecessary detail, the court held, citing *Milenkovic v. State,* 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978), that the offer should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt. The court then found that defense counsel's assertion that the jury should hear about conversations that were held between the defendant and the complainant as to the question of abortion and the question of whether the complainant was bearing the defendant's child was inadequate as an offer of proof because it did not establish the relevancy of the matter asserted. Therefore, the court concluded that it need not address the issue of whether sec. 972.11(2) or sec. 971.31(11) supported the exclusion of evidence regarding the complainant's pregnancy because the offer of proof made at trial was insufficient.

---

[4]"**901.03 Rulings on evidence. (1)** Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and

". . .

"(b) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked."

In regard to the testimony of the worker from the rape crisis center, the court of appeals held, citing sec. 907.02, Stats.,[5] that a witness may be qualified to testify as an expert because of knowledge, skill, experience, training, or education. The court noted that the witness had six years of experience at the rape crisis center and had personally dealt with seventy to eighty victims. This experience, the court of appeals concluded, was sufficient to allow the circuit court to conclude that the witness was an expert in the area of sexual assault victim behavior.

In addition, the court of appeals held that the witness did not testify as an expert beyond the subject for which she was qualified. The court of appeals found that the witness merely testified about a variety of emotional states exhibited by sexual assault victims she had encountered. The witness did not offer an opinion as to whether the complainant was sexually assaulted. Rather, her testimony was used to rebut common misconceptions about the presumed behavior of sexual assault victims, by sharing her personal observations of other sexual assault victims she had encountered.

Finally, the court of appeals denied the defendant's request for a new trial in the interest of justice because the court concluded that no errors had occurred at the circuit court level.

---

[5] "907.02 **Testimony by experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

## WHETHER THE CIRCUIT COURT PROPERLY EXCLUDED EVIDENCE OF THE COMPLAINANT'S PREGNANCY

The defendant argues that the exclusion of evidence of the complainant's pregnancy and her desire to obtain an abortion violated his right to present a defense under the fifth and fourteenth amendments and the confrontation clause of the sixth amendment of the United States Constitution. He maintains that the right to confront adverse witnesses is especially important in sexual assault prosecutions since the trial often turns on the credibility of the complainant. The defendant argues that the pregnancy evidence was material for two specific reasons. First, he asserts that it is unlikely that a man would violently rape a woman who is carrying his child. Second, he argues that the complainant's desire to have an abortion which he opposed provided a motive for the complainant to make a false accusation. Finally, the defendant contends that even if his offer of proof was inadequate under sec. 901.03(1)(b), Stats., this court should nevertheless review the alleged error pursuant to sec. 901.03(4). Section 901.03(4) provides: **"Plain error.** Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."** Under this provision, there may be a review and a reversal of a conviction if plain error was committed. *State v. Sonnenberg,* 117 Wis. 2d 159, 176, 344 N.W.2d 95 (1984).

We agree with the court of appeals that the defendant's offer of proof was inadequate. As the court of appeals noted, an offer of proof need not be stated

with complete precision or in unnecessary detail, but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt. *State v. Haynes*, 118 Wis. 2d 21, 28–29, 345 N.W.2d 892 (Ct. App. 1984). The offer of proof must enable the reviewing court to act with reasonable confidence that the evidentiary hypothesis can be sustained. *State v. Salter*, 118 Wis. 2d 67, 74, 346 N.W.2d 318 (Ct. App. 1984). The offer of proof by the defendant did not meet these requirements.

In arguing that the evidence of the complainant's pregnancy and her desire to have an abortion should be admissible on cross-examination of the complainant, the defendant conclusionally asserted only that the jury should hear about "conversations that were made between [his] client and the alleged victim as to the question of abortion and the question of whether she was bearing Mr. Robinson's child prior to this alleged sexual assault. ..." The defendant never explained why the jury should hear about these conversations. He never explained, until after trial, that a theory of defense was that the defendant would not assault his pregnant former girlfriend because the defendant did not want to harm a fetus he had fathered. To the contrary, the closest the defendant came to making an offer of proof indicated that there was a question whether the child the complainant was bearing was fathered by the defendant.

Similarly, the defendant never explained, until after trial, that a theory of defense was that the complainant had a motive to testify falsely because she wanted to have an abortion and the defendant was trying to prevent her from obtaining one. Again, the closest the defendant came to making an offer of proof

indicated only that conversations were held between the defendant and the complainant as to the question of abortion. No issue was ever raised at trial that the complainant wanted to get rid of the defendant so she could obtain an abortion without his interference. Nor did the defendant or any defense witness present evidence suggesting such.

■

We conclude, therefore, that the offer of proof by the defendant did not state an evidentiary hypothesis underpinned by a sufficient statement of facts to enable this court to conclude with reasonable confidence that the evidentiary hypothesis could be sustained. Consequently, we will now address the issue of whether the exclusion of the evidence of the complainant's pregnancy and her desire to have an abortion was plain error. Plain error is error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time. *Sonnenberg,* 117 Wis. 2d at 177, citing *Virgil v. State,* 84 Wis. 2d 166, 191, 267 N.W.2d 852 (1978).

The circuit court prohibited the defendant from cross-examining the state's witnesses to elicit evidence about the complainant's pregnancy and intent to obtain an abortion. The court expressly excluded such evidence under sec. 971.31(11), Stats., which provides that in actions under sec. 940.225 evidence which is admissible under sec. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial. The circuit court held that evidence of the complainant's pregnancy at the time of the assault was not material to a fact at issue in this case because the defendant was not

charged with any degree of sexual assault in which it was necessary to prove specific instances of sexual conduct to show the source or origin of semen, pregnancy, or disease, so as to be admissible under sec. 972.11(2)(b)2.

A circuit court's ruling on relevance will be reversed only for an abuse of discretion. *State v. Pharr,* 115 Wis. 2d 334, 344–45, 340 N.W.2d 498 (1983). A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law. Additionally, and most importantly, a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasonable and reasoned determination. It is recognized that a trial court in an exercise of its discretion may reasonably reach a conclusion which another judge or another court may not reach, but it must be a decision which a reasonable judge or court could arrive at by the consideration of the relevant law, the facts, and a process of logical reasoning. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Relevant evidence is defined in sec. 904.01, Stats., as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

We conclude that the circuit court did not abuse its discretion in prohibiting the defendant from questioning any of the state's witnesses regarding the complainant's pregnancy. The defendant failed to

show the relevance of the evidence at the circuit court level. The circuit court's determination was the product of a rational mental process by which the facts of the record and the law relied upon were stated and were considered together for the purpose of achieving a reasonable and reasoned determination.

██

Moreover, we are not persuaded by the reasons the defendant advances before this court for finding the evidence relevant. The defendant asserts that a man would not violently rape a woman who was carrying his child. However, there is absolutely no evidence in the trial record to establish that the complainant was in fact pregnant with the defendant's child.[6] The defendant also argues that the complainant's desire to have an abortion which he opposed provided a motive for the complainant to make a false accusation. Again, the record fails to demonstrate the relevance of this evidence. The defendant did not contact the complainant for two months after the assault, giving her plenty of opportunity to obtain an abortion without his interference. Moreover, the defendant's alleged opposition would have provided no legal impediment whatsoever to the

---

[6]The court of appeals was of the opinion that the complainant was pregnant with the defendant's child at the time of the sexual assault. This opinion is not supported by the record at trial. The defendant did assert at his sentencing hearing and at his post-conviction motion hearing that the complainant was pregnant with his child at the time of the assault. However, even given the defendant's theory of relevance developed at the post-conviction motion hearing, evidence of the complainant's pregnancy would still properly be excluded under secs. 904.02, 904.03, and 971.31(11), Stats., because its probative value is slight and far outweighed by its prejudicial effect, to the extent that there is any relevancy.

complainant's obtaining an abortion. While acknowledging the importance of the constitutional rights that the defendant raises, we conclude that his constitutional rights were not violated in this case because a defendant has no right, constitutional or otherwise, to present irrelevant evidence. *State v. Bolstad*, 124 Wis. 2d 576, 584, 370 N.W.2d 257 (1985); *State v. Droste*, 115 Wis. 2d 48, 58, 339 N.W.2d 578 (1983).

## WHETHER THE CIRCUIT COURT PROPERLY PERMITTED A RAPE CRISIS CENTER WORKER TO TESTIFY AS AN EXPERT WITNESS

Two questions must be addressed in resolving this issue. The first question is whether the worker from the rape crisis center was properly qualified as an expert witness. The second question is whether the testimony was properly admitted under sec. 907.02, Stats. "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The question of an expert witness's qualifications is a matter resting in the sound discretion of the circuit court, and unless it is shown that the circuit court abused its discretion, its ruling will stand. *Green v. Rosenow*, 63 Wis. 2d 463, 472, 217 N.W.2d 388 (1974). The qualification of an expert has historically been a matter not of licensure, but of experience. *Karl v. Employers Ins. of Wausau*, 78 Wis. 2d 284, 297, 254 N.W.2d 255 (1977); *Brain v. Mann*, 129 Wis. 2d 447, 454, 385 N.W.2d 227 (Ct. App. 1986).

In regard to the first question, the witness from the rape crisis center testified that she had six years of experience at the center, functioning as an advocate for sexual assault victims by providing emotional support and information. In addition, she testified she had personally dealt with seventy to eighty victims. Given these facts, the circuit court did not abuse its discretion in holding that her experience was sufficient to qualify her as an expert.

In regard to the second question, concerning the admissibility of the testimony under sec. 907.02, Stats., we have recognized that expert testimony is admissible when it assists the trier of fact in understanding the evidence or a fact in issue. *Kerkman v. Hintz,* 142 Wis. 2d 404, 422–23, 418 N.W.2d 795 (1988); *State v. Walstad,* 119 Wis. 2d 483, 515–19, 351 N.W.2d 469 (1984). The testimony presented by the witness in this case satisfies this requirement. The witness testified only as to her observations of the complainant and her observations of other sexual assault victims. She testified that she observed that many victims of sexual assault were emotionally flat immediately after the assault and that she commonly saw an apparent shift in emotions from relative calmness to agitation in the hours, days, or weeks following the assault. The witness was not asked to draw any inferences or offer any opinions about the complainant in this case based on what she had observed about other victims of sexual assault. In fact, the witness did not offer any opinion evidence at all.

In *State v. Haseltine,* 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), the court of appeals precluded a psychiatrist from giving an opinion, based

on the victim's behavior patterns, that the victim was an incest victim. The court held, in the context presented, that the psychiatrist's opinion, with its aura of scientific reliability, created too great a possibility that the jury abdicated its fact-finding role to the psychiatrist and did not independently decide the defendant's guilt. *Id.* The court noted, however, that:

> "Although we reverse Haseltine's convictions, we do not hold that psychiatric or other expert testimony is inadmissible in incest cases. Depending on the case, the testimony of an expert might aid the jury. For example, an incest victim may not immediately report the incest, or may recant accusations of incest. Jurors might reasonably regard such behavior as an indication that the victim was not telling the truth. An expert could explain that such behavior is common among incest victims as a result of guilt, confusion, and a reluctance to accuse a parent." *Id.* at 96–97.

Similarly, in *Scadden v. State,* 732 P.2d 1036 (Wyo. 1987), the Wyoming Supreme Court held that expert testimony which serves to rebut a defendant's assertions that a delay in reporting a sexual assault is inconsistent with its occurrence is admissible. *Id.* at 1047. The court noted that the expert witness, a police officer, merely testified about her interviews with the complainants involved in the case and about the range of responses to sexual assault that she had encountered. *Id.* at 1044–47. The witness testified that the victims she had encountered often delayed reporting sexual abuse or assault. *Id.* at 1044. The witness did not testify about the victims' states of mind, nor did she express an opinion on whether the victims were suffering from rape trauma. *Id.* at 1047. Consequently,

the Wyoming Supreme Court held that the trial court did not abuse its discretion in admitting the witness's testimony. *Id.* at 1048.

The expert testimony in this case was helpful to the jury because the defendant attempted to rebut the complainant's testimony by noting that she was not crying after the assault and that she was so composed she was able to write out her own statement at the police station. The defense attempted to capitalize on the misconception that all sexual assault victims are emotional following the assault.[7] We conclude, therefore, that the witness's testimony in this case assisted the jury in understanding reactions with which it perhaps was not familiar. Consequently, we hold that the circuit court did not abuse its discretion by admitting the testimony at issue into evidence because where a defendant has suggested to the jury that some conduct of the victim after the incident is inconsistent with her claim of having been sexually assaulted, the use of expert testimony in relating observations of the way other sexual assault victims actually behave serves a particularly useful role by disabusing the jury of some widely held misconceptions about sexual assault victims.

---

[7]A number of studies have demonstrated that many commonly held beliefs about sexual assault victims are overwhelmingly refuted by empirical data. Masaro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony,* 69 Minn. L. Rev. 395, 402–10 (1985). "Despite this evidence, however, the rape mythology persists, and recent studies reveal that rape myths insidiously infect the minds of jurors, judges, and others who deal with rape and its victims." *Id.* at 404.

## WHETHER A NEW TRIAL SHOULD BE GRANTED IN THE INTEREST OF JUSTICE

█ The defendant argues for a new trial in the interest of justice. Because we conclude that no errors occurred, reversal in the interest of justice is inappropriate.

*By the Court.*—The decision of the court of appeals is affirmed.