DUGAN, J.
¶1 Maries D. Addison, with counsel, appeals from judgments of conviction for seventeen felonies, including sexual assault, human trafficking, child exploitation, and child enticement with intent to cause the child to engage in prostitution.[1] Addison also appeals the order denying his postconviction motion. This appeal is from three cases that the trial court consolidated for purposes of trial. We also consolidated the three cases for the purposes of this appeal.[2]
¶2 Addison argues that the cases against him should have been dismissed due to the violation of his speedy trial rights. He also argues that the trial court erred (1) when it denied his request for new counsel, required him to proceed pro se , and when it failed to make a sufficient finding that he was competent to represent himself; and (2) when it directed his Bible be removed from the courtroom in violation of his right to religious freedom. We are not persuaded and, therefore, affirm.
PROCEDURAL HISTORY
The first case
¶3 The State filed a nine count criminal complaint on March 7, 2011, charging Addison with one count of false imprisonment as a party to the crime; four counts of second-degree sexual assault by use of force or violence; one count of kidnapping by seizing or confining forcibly; two counts of first-degree sexual assault by use of force, being aided or abetted by others; and one count of strangulation. All the counts involved one victim, K.L.
The second case
¶4 The State filed an eleven count complaint on April 15, 2011, charging Addison with one count of child enticement with intent to cause a child to engage in prostitution; one count of trafficking of a child; three counts of second-degree sexual assault by use of force or violence; one count of child enticement with intent to cause a child to expose a sex organ; one count of strangulation and suffocation; two counts of sexual exploitation of a child by employing, using, or inducing a child to engage in sexually explicit conduct; one count of third-degree sexual assault; and one count of human trafficking. Ten counts involved victim D.S.B. and one count involved victim J.G. The State dismissed the third-degree sexual assault count on May 16, 2011.
The first motion for consolidation and withdrawal of retained trial counsel
¶5 On April 18, 2011, the State initially filed a motion to consolidate the two cases against Addison for trial. At a May 16, 2011 hearing, trial counsel moved to withdraw because he was unwilling to represent Addison in the second case.[3] The trial court granted the withdrawal motion and continued the matter until May 31, 2011, to allow for new counsel to be appointed. At the May 31, 2011 proceeding, newly appointed trial counsel appeared.
The third case
¶6 The State filed a four count criminal complaint on June 21, 2011, charging Addison with three counts of human trafficking and one count of second-degree sexual assault by use of force or violence. The three human trafficking counts involved three different victims, P.T., J.C., and J.P.; the other count involved victim J.C.
The second motion for consolidation
¶7 On June 29, 2011, the State filed a motion to consolidate all three cases for trial. On August 4, 2011, the State dismissed the human trafficking charge involving P.T. in the third case. On August 23, 2011, the trial court granted the State's motion to consolidate the three cases and set a jury trial for December 5, 2011. Addison did not object to the consolidation.
Further trial court proceedings
¶8 At a November 14, 2011 final pretrial conference, trial counsel requested an adjournment of the December 5, 2012 trial to continue investigation of the cases and due to a personal injury. The State was prepared to proceed to trial. The trial court granted the adjournment and scheduled a jury trial for February 21, 2012. On February 17, 2012, the trial court informed the parties that due to the ongoing trial in another case, it had to adjourn the trial date. The jury trial was then scheduled for June 18, 2012.
¶9 On June 11, 2012, the State provided trial counsel with 3000 photos and 750 text messages that had been on Addison's cellular telephone. On June 18, 2012, trial counsel requested an adjournment of the trial date because of that new material. The State agreed "it would be inadvisable not to give the defense adequate time" to review the "ton of material" on the disk. The trial court granted the adjournment.
¶10 At a July 24, 2012 final pretrial conference, trial counsel requested permission to withdraw from representing Addison. The trial court denied the motion. Immediately after the trial court stated that it was denying Addison's request for new counsel, Addison stated that he wanted to represent himself. After a hearing, the trial court found that Addison was competent to represent himself at trial and had freely and voluntarily waived his right to counsel. The trial court also appointed trial counsel as standby counsel for Addison.
¶11 The trial court presided over a thirteen day jury trial that began on August 13, 2012, and ended on August 28, 2012. During the course of the trial, the trial court ordered removal of Addison's Bible from the courtroom.
¶12 At the conclusion of the trial, the jury found Addison guilty of seventeen of the charges and not guilty of five of the charges. Specifically, the jury returned not guilty verdicts on the kidnapping count and one count of second-degree sexual assault in the first case, one count of second-degree sexual assault and one count of human trafficking in the second case, and one count of second-degree sexual assault in the third case.
¶13 On November 16, 2012, the trial court imposed a global sentence of eighty years of initial confinement and twenty-three years of extended supervision.
Postconviction proceedings
¶14 On October 16, 2017, Addison, with counsel, filed a postconviction motion requesting dismissal or a new trial, making the same three claims he presents on appeal. The postconviction court denied the motion.
¶15 This appeal followed.
DISCUSSION
¶16 Addison argues that the cases against him should have been dismissed due to the violation of his speedy trial rights. He also argues that the trial court erred when it denied his request for new counsel, required him to proceed pro se , did not make a sufficient inquiry regarding his competency to represent himself, and directed removal of his Bible from the courtroom in violation of his right to religious freedom.
I. Standards of review and applicable law
Right to a speedy trial
¶17 We review de novo the question of law of whether a defendant's constitutional right to a speedy trial has been violated; however, we accept the postconviction court's findings of fact unless they are clearly erroneous. See State v. Urdahl , 2005 WI App 191, ¶10, 286 Wis. 2d 476, 704 N.W.2d 324. The test for determining whether there has been a denial of a defendant's constitutional right to a speedy trial is a four-part balancing test involving consideration of the following: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the delay resulted in any prejudice to the defendant. See Barker v. Wingo , 407 U.S. 514, 530 (1972) ; State v. Borhegyi , 222 Wis. 2d 506, 509, 588 N.W.2d 89 (Ct. App. 1998). We determine whether a violation occurred under the totality of the circumstances that exist in the case. Urdahl , 286 Wis. 2d 476, ¶11. "Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily." Id.
¶18 However, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." Barker , 407 U.S. at 530. "Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." Doggett v. United States , 505 U.S. 647, 652 n.1 (1992) ; see also Green v. State , 75 Wis. 2d 631, 636, 250 N.W.2d 305 (1977).
Change of counsel, waiver of counsel, and competency to proceed pro se
¶19 As noted, this case involves review of the trial court's decision not to allow trial counsel to withdraw, its decision to allow Addison to represent himself at trial, and its finding that Addison was competent to represent himself at trial. Whether trial counsel should be relieved and a different attorney appointed is a matter of the trial court's discretion, and we will not disturb the trial court's decision absent an erroneous exercise of discretion. See State v. Jones , 2010 WI 72, ¶23, 326 Wis. 2d 380, 797 N.W.2d 378. To determine whether a defendant knowingly waived the right to counsel, we independently apply constitutional principles to the facts. See State v. Klessig , 211 Wis. 2d 194, 204, 564 N.W.2d 716 (1997). A trial court's determination of a defendant's competency to proceed pro se "will be upheld unless totally unsupported by the facts." Pickens v. State , 96 Wis. 2d 549, 569-70, 292 N.W.2d 601 (1980), overruled on other grounds by Klessig , 211 Wis. 2d at 206. On appeal, we do not disturb the trial court's credibility determinations. See State v. Turner , 114 Wis. 2d 544, 550, 339 N.W.2d 134 (Ct. App. 1983) ; see also WIS. STAT. § 805.17(2) (2017-18)[4] (stating that, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses") (made applicable to criminal proceedings by WIS. STAT. § 972.11(1) ).
¶20 When considering whether a trial court erred in denying a motion by counsel to withdraw, we consider various factors including: "(1) the adequacy of the court's inquiry into the defendant's complaint; (2) the timeliness of the motion; and (3) whether the alleged conflict between the defendant and the attorney was so great that it likely resulted in a total lack of communication that prevented an adequate defense." See State v. Lomax , 146 Wis. 2d 356, 359, 432 N.W.2d 89 (1988). We also consider whether a defendant previously changed lawyers and whether the requested change is for a "legitimate reason rather than mere delay." See State v. Jones , 2007 WI App 248, ¶13, 306 Wis. 2d 340, 742 N.W.2d 341.
¶21 When a defendant requests to proceed pro se , a trial court must insure that the defendant (1) has knowingly, intelligently, and voluntarily waived his right to counsel, and (2) is competent to proceed pro se . Klessig , 211 Wis. 2d at 203. To establish a valid waiver of counsel, the trial court must conduct a colloquy to ensure the defendant (1) "made a deliberate choice to proceed without counsel," (2) is "aware of the difficulties and disadvantages of self-representation," (3) is aware of the seriousness of the pending charges, and (4) is aware of the general range of penalties that could be imposed. Id. at 206.
¶22 In determining a defendant's competency to represent himself, a trial court should consider factors including "the defendant's education, literacy, fluency in English, and any physical or psychological disability which may significantly affect his ability to communicate a possible defense to the jury." Id. at 212 (citation omitted). Courts "should not prevent persons of average ability and intelligence from representing themselves 'unless a specific problem or disability can be identified which may prevent a meaningful defense from being offered, should one exist.' " Id. (citation omitted).
Evidentiary rulings and courtroom decorum
¶23 We review evidentiary rulings under an erroneous exercise of discretion standard. See State v. Walters , 2004 WI 18, ¶13, 269 Wis. 2d 142, 675 N.W.2d 778. A trial court properly exercises discretion when it examines relevant facts, applies a proper legal standard, uses a demonstrated rational process, and reaches a conclusion a reasonable judge could reach. Id. , ¶14. Whether a trial court's evidentiary ruling deprived a defendant of a constitutional right is a question of constitutional fact subject to independent appellate review. See State v. Williams , 2002 WI 58, ¶69, 253 Wis. 2d 99, 644 N.W.2d 919.
¶24 Trial courts have broad authority to oversee courtroom decorum and the presentation of evidence. See Medved v. Medved , 27 Wis. 2d 496, 504, 135 N.W.2d 291 (1965) (stating "[a] trial court has the right to control and conduct its court in an orderly, dignified and proper manner" (citation and two sets of quotation marks omitted)); State v. James , 2005 WI App 188, ¶8, 285 Wis. 2d 783, 703 N.W.2d 727 (trial courts have "broad discretion to admit or exclude evidence and to control the order and presentation of evidence at trial"); WIS. STAT. § 906.11(1). Additionally, there is no constitutional right to present irrelevant evidence. State v. Robinson , 146 Wis. 2d 315, 332, 431 N.W.2d 165 (1988).
II. The delay in the trial of this case did not violate Addison's constitutional right to a speedy trial
¶25 Addison argues that he was deprived of his right to a speedy trial. He contends that the delay in this case was presumptively prejudicial; that the trial court erred in determining that the State was responsible for only four months of the delay; that he asserted his speedy trial demand on March 15, 2011, and that demand was never withdraw; that he did not consent to trial counsel's request for additional time on November 13, 2011, or later; and that he was prejudiced by the delay.
A. Length of delay
¶26 The parties agree that the length of the delay in this case was approximately one year and five months and is presumptively prejudicial.[5] See Green , 75 Wis. 2d at 636. Therefore, we analyze the three other factors and then, balance the four factors. We conclude that there was no violation of Addison's right to a speedy trial.
B. The reasons for delay
¶27 In considering the reasons for the delay, we identify the reason for each portion of the delay and, then, accord different treatment to each category of reasons. See Urdahl , 286 Wis. 2d 476, ¶26. For instance,
[a] deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily. On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted. Finally, if the delay is caused by the defendant, it is not counted.
See id. (citations omitted).
March 7, 2011, to May 31, 2011
¶28 Addison asserts the delay from March 7 through May 31, 2011, should be attributed to the State because it initially delayed proceedings for "its convenience as it decided to bring additional charges against Addison and join them with older cases."
¶29 As noted, the State filed the first case on March 7, 2011, and a May 31, 2011 trial was set. At a March 21, 2011 scheduling conference, after the State indicated it intended to file new charges and move for consolidation of the two cases, the trial court ordered that any motions for consolidation be filed by April 5, 2011.[6] No motion was filed. Instead, on April 7, 2011, the State indicated that it was filing a second case against Addison, it needed more time to talk to a victim, and it intended to move to consolidate. The State filed the second case on April 15, 2011, and on April 18, 2011, it filed a motion for consolidation. On May 16, 2011, trial counsel moved to withdraw because he was unwilling to represent Addison in the second case. The trial court allowed counsel to withdraw and continued the matter until May 31, 2011, to allow for new counsel to be appointed. On May 31, 2011, newly appointed trial counsel appeared.
¶30 Based on these facts, the postconviction court found that "no delay" could be attributed to the State. We disagree. The record shows that the delay between March 7, 2011 and May 31, 2011, is attributable to the State. However, Addison has not cited any facts to support his conclusory assertion that the State intentionally delayed in bringing the additional charges. As we have often stated, it is not the duty of this court to scour the record for those facts. See Tam v. Luk , 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990). This delay does not involve any intentional delay and, therefore, does not weigh heavily against the State.
June 1, 2011, to June 29, 2011
¶31 The postconviction court found that at the request of the parties, a June 30, 2011 hearing on the motion to consolidate had been adjourned. The parties made the request because the preliminary hearing in the third case that began on June 29, 2011, was not completed because the trial court's day ended. The postconviction court found that this delay was not attributable to the State. Addison does not challenge this determination, and we agree. This delay is attributable to the "ordinary demands of the judicial system" and does not count against the State. See Norwood v. State , 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976).
June 30, 2011, to August 23, 2011
¶32 The postconviction court found that this delay of about two months was attributable to the State. The State concedes that this determination is correct. On July 19, 2011, due to an ongoing trial, the prosecutor sought an adjournment of the preliminary hearing in the third case. This delayed the trial court's decision on consolidation. Because it involved no deliberate attempt to hamper the defense, this period does not weigh heavily against the State. See Urdahl , 286 Wis. 2d 476, ¶26.
August 24, 2011, to February 20, 2012
¶33 The postconviction court found that of this six month delay approximately three months were "clearly attributable to the defense[.]"[7] The record supports this determination. On August 23, 2011, Addison did not object to consolidation of the cases and the trial court set a December 5, 2011 trial date. Later, trial counsel sought adjournments for further investigation and due to a personal injury. The State was ready for trial on December 5, 2011. Therefore, the period between August 24, 2011, and February 20, 2012, does not weigh against the State.
February 21, 2012, to June 10, 2012
¶34 The postconviction court found that the delay of about four months between the adjourned February 21, 2012 trial date and June 10, 2012, was due to the trial court's overcrowded calendar. Though not directly attributable to the State, this delay still weighs against the State. See id. (stating that overcrowded courts weigh "less heavily" against the State).
June 10, 2012, to August 13, 2012
¶35 The postconviction court found that the delay of approximately two months between the June 10, 2012 adjourned trial date and the August 13, 2012 start of the trial weighed against the State. The State argues that the delay attributable to Addison began one week later, on June 18, 2012, when trial counsel advised the trial court that she needed more time to prepare and the trial was actually delayed.
¶36 Although trial counsel sought the adjournment to review the phone records the State provided one week earlier, the State recognized that the records it had delivered on June 11, 2012, contained a "ton of material." The June 18, 2012 statements of trial counsel establish that the delivery of this new discovery material had an immediate impact on trial counsel's preparations. Thus, we conclude that this delay began on June 11, 2012, when the State gave the records to the defense. Nonetheless, this two month delay does not weigh heavily against the State. The postconviction court found that "certainly the State didn't try to withhold this in any way, but it took a lot of time to get it downloaded and get it over to the defense."
¶37 A total of about ten months of delay is attributed to the State: two months for the charging delay; two months for the preliminary hearing delay; four months for the trial court's calendar; and two months for the phone records. None of this delay weighs heavily against the State. See id.
C. Addison asserted his right to a speedy trial
¶38 The parties agree that Addison asserted his right to a speedy trial on March 15, 2011. However, the State argues that Addison's actions after he asserted that right "significantly diminish" the weight that should be assigned to his initial assertion, citing State v. Williams , 2004 WI App 56, ¶41, 270 Wis. 2d 761, 677 N.W.2d 691.
¶39 A defendant acts inconsistently with a speedy trial right by affirmatively requesting or acquiescing in a delay of the commencement of the trial. See id. After filing his speedy trial request, Addison did not object to the State's requests for consolidation of the cases against him. Additionally, trial counsel requested adjournments of the December 5, 2011 trial date and the June 18, 2012 trial date.
¶40 In his initial appeal brief, Addison asserted that he did not "personally consent" to the adjournments. In response, the State cited the transcript of trial counsel's request for adjournment of the December 5, 2011 trial date. Trial counsel stated, "I've talked to ... Addison and, you know, obviously he wants me to be fully prepared so he doesn't have a problem." Addison did not reply to this factual assertion and, therefore, we deem him to have conceded the assertion. See United Co-op. v. Frontier FS Co-op. , 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession). Thus, Addison concedes that he approved the three month delay between mid-November and mid-February. Overall, Addison's acquiescence in the consolidation of the cases and his adjournment requests significantly diminish the weight of his speedy trial demand. See Williams , 270 Wis. 2d 761, ¶41.
D. The delay did not result in any prejudice to Addison
¶41 With respect to prejudice, Addison asserts that Milwaukee County Jail records show that he had back pain, athlete's foot, possible ulcers, and situational depression while he was held prior to trial. He also argues the "State's lack of organization in getting the electronic discovery to [trial counsel] and [him] prejudiced [his] ability to be properly prepared for trial and probably contributed to his distrust of [trial counsel] whom he discharged."
¶42 Courts evaluate whether a defendant suffered prejudice in light of the interests protected: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the defendant; and, most importantly, (3) limiting the possibility the defense will be impaired. Urdahl , 286 Wis. 2d 476, ¶34. Speculative claims of prejudice will be rejected. See id. , ¶36.
¶43 First, Addison's claim about ailments in the jail is unsupported. He neither attached jail records to his postconviction motion nor provided any other support for his assertions. Moreover, even if the claimed medical conditions existed, we note that Addison does not argue that such conditions were caused by his pretrial incarceration, as opposed to other causes. Additionally, he has not shown that any such conditions impaired his defense-the most important consideration. See id. , ¶34. Furthermore, Addison's argument about the delay "probably" contributing to his distrust of trial counsel is speculative. We note that the trial court granted trial counsel's request for an adjournment to review Addison's phone records, and then, after Addison was proceeding pro se , the trial court ordered that Addison have access to electronic records in jail. Addison has failed to show how any of his claims of prejudice affected his defense.
E. Balancing the four factors
¶44 Balancing the four factors, we conclude that Addison's right to a speedy trial was not violated. While the ten months of delay attributable to the State are not insignificant, as we concluded above, no part of the delay weighs heavily against the State. See id. , ¶37. Further, as we noted, four months of the delay were due to the trial court's congested calendar. See id. Additionally, after asserting his right to a speedy trial, Addison acquiesced in the State's consolidation requests and sought continuances which significantly diminished the weight of that demand. See Williams , 270 Wis. 2d 761, ¶26. As noted by the postconviction court, the longest delays were due to delays jointly requested by the State and Addison, and due to the fact that the cases involved voluminous discovery materials, multiple charges, and multiple witnesses. Moreover, Addison's showing of prejudice is minimal. Thus, we conclude that under the totality of the circumstances there was no violation of Addison's right to a speedy trial.
III. The trial court properly exercised its discretion in denying Addison's request for new counsel, finding that Addison was competent to represent himself and allowing Addison to represent himself
¶45 Addison contends that the trial court erroneously exercised its discretion in denying his request for new counsel and when it allowed him to represent himself without making a sufficient finding that he was competent to represent himself.
The denial of new counsel
¶46 As noted, on July 24, 2012, three weeks prior to trial, the trial court granted Addison's request to represent himself at trial. The hearing began with trial counsel advising the trial court that "Addison has told me that he no longer wants me to be his attorney. He has filed an OLR [Office of Lawyer Regulation] complaint against me." When the trial court asked Addison what was going on, he stated that he was facing a possible sentence of nearly 700 years and that trial counsel was not pursuing leads or showing concern about text messages that Addison believed were missing from phone records, and that trial counsel was not pursuing leads regarding the alleged victims and their continuing prostitution. He stated that he had "given her witnesses" who had encountered the victims. He also said that trial counsel got "snappy a lot" and did not want to pursue the fact that text messages were "missing off the file."
¶47 Trial counsel advised the trial court that she was pursuing the issue regarding the text messages; however, Addison had first raised the leads the Saturday before the Tuesday hearing. That Saturday, trial counsel had spent four hours at the jail with Addison, but each time she asked a question that he did not like, he would begin to yell at her. Trial counsel said that Addison was also uncooperative, citing his failures to fulfill her requests that he write her a letter stating what he believed that she had not done and that he review a private investigator's memos and tell her who he wanted on his witness list.
¶48 After listening to both Addison and trial counsel explain their positions at length, the trial court found that Addison had not been "making an honest effort in order to be ready for trial on August 13[, 2012]." The trial court noted that the trial in the "extremely complex case" was in three weeks, the trial date had been set four times, and this was the first time the trial court had been told about any kind of conflict. The trial court found that Addison was not cooperating with trial counsel as he had been until then; there was not a "real conflict"; and that if a conflict existed, Addison, not trial counsel, was creating any conflict as a "delay tactic." Thus, trial court denied trial counsel's request to withdraw.
¶49 Addison argues that although appointment of new counsel would have delayed the trial, the trial court did not consider that there was sufficient time to allow the State to notify its witnesses about the delay and for the trial court to fill its calendar, and that he had not previously discharged counsel. The trial court clearly considered and rejected the possibility of rescheduling the trial, noting that the inconvenience to the witnesses would be "huge" because their lifestyles made it difficult to find and keep track of them, that some witnesses wanted to move out of town, and the interest of justice required that the case proceed to trial. While the trial court did not discuss whether Addison had previously discharged counsel, Addison does not explain how consideration of the fact that he had not done so would have affected the trial court's decision, and we conclude that it would not have made any difference.[8]
¶50 Key to the trial court's decision were the facts that Addison had worked with trial counsel over an extended period of time without any apparent difficulties until the trial date was imminent and that Addison was not credible as to the existence of an actual conflict. In other words, the trial court found that Addison was purposely trying to create a conflict to obtain an adjournment of the trial.[9] Addison does not challenge the trial court's credibility determination, which had a significant role in the trial court's ruling, and we rely upon it. See Turner , 114 Wis. 2d at 550. Under the erroneous exercise of discretion standard, the question is not whether the reviewing court would have resolved the issue differently. The record establishes that the trial court considered the relevant facts, applied the proper legal standard, used a rational process, and reached a conclusion that a reasonable judge could reach. See Jones , 326 Wis. 2d 380, ¶23. Therefore, we conclude that the trial court properly exercised its discretion in denying the request for new counsel.
Waiver of right to counsel and competency to proceed
¶51 Immediately after the trial court stated that it was denying Addison's request for new counsel, Addison stated "I'll represent myself then.... She's not gonna represent me. She's not in my favor. I refuse to have her represent me, period. I refuse." The trial court then engaged in a thorough colloquy with Addison, asking him whether he understood the charges and possible penalties and then reviewing both the charges and possible penalties with him. The trial court also inquired about Addison's age, education, job, understanding of the court proceedings, and any medical or emotional problems that could affect his ability to be alert in court. Addison responded appropriately to each question, stating he was twenty-eight years old, had two years of college, worked as a telemarketer and a marketing associate, understood the court proceedings "[s]omewhat," and had no medical or emotional problems that would affect his ability to be alert in court.
¶52 The trial court also asked Addison about his understanding of his constitutional rights to counsel and to represent himself, and explained in detail the advantages of representation by trial counsel. It found that he understood those rights. The trial court also asked Addison whether anyone had promised him anything in exchange for him giving up his right to counsel, whether he was giving the right up of his own free will, and whether he had sufficient time to make up his mind. Addison responded that he wanted to give up his right to counsel and exercise his right to represent himself. The trial court found that Addison "clearly is intelligent and has the ability under the law to represent himself," and that he was making that choice freely and voluntarily, with no force from anyone. The trial court accepted Addison's waiver of his right to counsel and allowed him to represent himself. It also appointed trial counsel as standby counsel, explaining that standby counsel would sit and listen during the trial and could assist Addison regarding what he could and could not do.[10]
¶53 Addison asserts that the colloquy and trial court findings did not address his lack of court experience or his "delusional statements" about Jesus.[11] Addison's claim that the trial court did not address his lack of court experience has no support in the record and merits no further discussion. Addison's characterization of his reference to Jesus as "delusional" is not supported by citation to the record that demonstrate that delusions caused his reference to Jesus. Therefore, this will not be further addressed. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶54 Addison also claims that his request to represent himself was an impulsive reaction to the trial court's denial of his request for new counsel. This claim is not supported by the record. On the third day of the trial, the trial court asked Addison if he was "aware that at any time [he] could change his mind about representing [himself] and ask [trial counsel] to step in as [his] lawyer." Addison indicated that he did and then continued to represent himself through the entire trial and the November 2012 sentencing.
¶55 Moreover, Addison demonstrated a strong ability to represent himself. He effectively cross-examined witnesses, adjusted to objections, and persuaded the court on evidentiary rulings. When he had procedural questions, he asked them. Addison was thorough; his trial took over two weeks. His efforts were also successful; the jury returned not guilty verdicts on the kidnapping count, three counts of second-degree sexual assault, and one count of human trafficking. The jury's return of not guilty verdicts on five out of twenty-two counts is supportive of Addison's competency to represent himself at trial.
¶56 In sum, based on our independent review of the record, we conclude that the trial court's colloquy established that Addison knowingly, intelligently, and voluntarily decided to represent himself, and that he was competent to do so.
IV. The trial court properly exercised its discretion when it ordered the removal of Addison's Bible from the courtroom
¶57 Addison contends that the trial court deprived him of his right to religious freedom during the trial by seizing his Bible. He also states that it was an erroneous exercise of discretion for the trial court to deprive him of his ability to consult religious books during the trial. We are not persuaded. Addison's argument regarding the deprivation of his right to religious freedom is not developed and will not be further addressed. See Pettit , 171 Wis. 2d at 646. Furthermore, we conclude that under the circumstances, the trial court properly exercised its discretion in ordering that the Bible be removed from the courtroom.
¶58 Addison focuses on the trial court's August 22, 2012 order, but we also consider the facts of August 17, 2012, which provide necessary context. On August 17, 2012, the trial court stated that it had been advised that Addison was periodically displaying a religious picture on the defense table, so that it was visible to the jurors as they passed the table, and it was also aware that Addison had a Bible in the courtroom throughout the trial. The trial court told Addison that the religious picture and the Bible could not be displayed in the courtroom because personal character demonstratives were not admissible under the evidence code to create an impression that Addison was a religious man.
¶59 On August 22, 2012, the trial court advised Addison that his Bible and other religious books had been removed from the courtroom and asked if he had any comment. Addison stated he was raising a constitutional objection because he was going to use the Bible for his defense. He said that he was going "to show that these are the Bibles that [he] went through" and "[t]his is the real me." He also stated that he did not intend to use them during trial, but when the State was cross-examining a witness, he would "just read[.]" The prosecutor responded indicating that while she was questioning a witness on redirect examination, Addison had picked up a Bible, turned his back to the witness, and "very flamboyantly" read his Bible. The State argued that Addison's behavior was a form of character evidence that was inadmissible under WIS. STAT. § 904.04, and that under WIS. STAT. ch. 906, the trial court had the obligation and authority to control the conduct of persons in the courtroom.
¶60 The trial court held that none of what Addison had been doing during the redirect examination was evidence and, therefore, it was "absolutely impermissible." The trial court also relied on WIS. STAT. § 906.10, which specifically provides that "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness's credibility is impaired or enhanced." It also pointed out that under WIS. STAT. § 904.04(1)(a), while "[e]vidence of a pertinent trait of the accused's character" may be admissible, the character evidence Addison was offering was not pertinent. Additionally, the trial court said that Addison would not be permitted to have a Bible in the courtroom because, previously on multiple occasions, Addison had engaged in the kind of conduct that the trial court had made evident was not permissible. Simply stated, Addison had ignored the trial court's prior admonishments.
¶61 The record demonstrates that the trial court examined the relevant facts, applied a proper legal standard, used a demonstrated rational process, and reached a conclusion a reasonable judge could reach. See Walters , 269 Wis. 2d 142, ¶14. Therefore, we conclude that the trial court properly exercised its discretion in ordering the removal of Addison's Bible from the courtroom.
CONCLUSION
¶62 Based upon our review of the record and independent consideration of the constitutional issues, we conclude that Addison's speedy trial rights were not violated. We also conclude the trial court properly exercised its discretion when it denied Addison's eleventh hour request for new counsel, found that he was competent to represent himself, allowed him to proceed pro se , and directed the removal of Addison's Bible from the courtroom.
By the Court .-Judgments and order affirmed.
Not recommended for publication in the official reports.

The jury returned not guilty verdicts on five of the twenty-two counts against Addison.

The first case filed against Addison was case No. 11CF1079 and is appellate case No. 18AP55-CR. The second case was case No. 11CF1664 and is appellate case No. 18AP56-CR. The third case was case No. 11CF2881 and is appellate case No. 18AP57-CR.
Several Milwaukee County Circuit Court judges presided over the consolidated cases. As relevant to the issues on appeal, the Honorable Rebecca F. Dallet presided over the proceedings from August 23, 2011, through July 24, 2012, and the Honorable Ellen R. Brostrom presided over the trial and sentencing and we refer to these judges collectively as the trial court. The Honorable Mark A. Sanders presided over the postconviction proceedings and we refer to him as the postconviction court.

The postconviction decision incorrectly states that May 2, 2011, was the date of this motion to withdraw; we use the correct date, May 16, 2011.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

This time period is from the date the first complaint was filed on March 7, 2011, until the trial started on August 13, 2012. In its response brief, the State identified errors in Addison's calculation of the delay in his initial brief. In his reply brief, Addison recalculated the length of the delay in accord with State's calculation.
The clock on a speedy trial claim starts to run when a defendant formally becomes the accused, such as with the filing of a complaint, State v. Lemay , 155 Wis. 2d 202, 209, 216, 455 N.W.2d 233 (1990), and ends at the "commencement of the trial." See State v. Williams , 2004 WI App 56, ¶41, 270 Wis. 2d 761, 677 N.W.2d 691.

The Honorable Dennis R. Cimpl presided over the scheduling conference.

The postconviction court did not specifically discuss the other three months of delay nor does Addison's initial brief. The State asserts that the entire six month period does not weigh against it. Addison did not reply to this argument, and we deem him to have conceded this issue. See United Co-op. v. Frontier FS Co-op. , 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession).

Addison had not previously "discharged" any court-appointed counsel-his prior trial counsel was privately retained. The record reflects that when requesting permission to withdraw, original trial counsel told the trial court that Addison had not paid him.

The trial court's finding that, if a conflict existed, Addison was creating it as a delay tactic is supported by the record of the trial. During the trial, the trial court specifically stated, "[T]here have been multiple instances throughout the trial where [trial counsel] has jumped in, often noting expressly that [Addison] has asked her to do so or agreed that she should.... [I]t appears [Addison] and [trial counsel] have been conferring a lot." It went on to state, "It appears that they have a good working relationship, and that they are talking to each other throughout the trial." It then asked Addison, "is that correct you have been consulting with [trial counsel]?" to which Addison responded, "Yes, it is, your Honor."

Trial counsel had advised the trial court that she was willing to act as standby counsel at trial.

The trial court asked Addison "Do you understand if you give up your constitutional right to an attorney there's no one in this courtroom whose only responsibility it is to look after and protect your legal rights[?]" Addison responded, "I have somebody here to protect me and you better know his name is Jesus Christ, and I'm going back to him to make sure I never see a prison cell behind this mess." The trial court then asked Addison, "Do you understand that if you give up your right to an attorney, there's no one else in the courtroom whose only responsibility it is to look after and protect your legal rights?" Addison responded, "There is someone in here. You just can't see him."